PAUL D. MANNING, Admr. c. t. a. *et al. vs.* BOARD OF TAX COMMISSIONERS OF THE STATE OF RHODE ISLAND.

RHODE ISLAND HOSPITAL TRUST CO. Excr. *et al. vs.* BOARD OF TAX COMMISSIONERS OF THE STATE OF RHODE ISLAND.

FEBRUARY 4, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, and Sweeney, JJ.

R ATHBUN,
J., dissenting as to first conclusion.

S WEETLAND, C. J. The first of the above entitled proceedings is a petition in equity filed by the administrator

with the will annexed of George A. Hill, late of Douglas in the Commonwealth of Massachusetts, and the Rhode Island Hospital Trust Co. as executor of the will of William W. Chapin, deceased, late of Providence, asking for the abatement of an inheritance tax paid under protest. The tax was assessed by the respondent board upon the estate of George A. Hill as an estate tax upon the right of the testator to transfer by his will certain real estate in Providence to William W. Chapin, late of Providence, who deceased after said testator. In assessing this tax the respondent board relied upon the provisions of Section 1 of the Inheritance Tax Act of 1916, which became Section 1, Chapter 39, General Laws, 1923, which after the death of the testator, George A. Hill, has been amended by Chapter 426, Public Laws, 1923.

The second of the above entitled proceedings is a petition in equity filed by the executor of the will of William W. Chapin and the administrator c. t. a. of the estate of George A. Hill for the abatement of an inheritance tax paid under protest. The tax was intended to be the complement of that which is the subject of the first of the above entitled proceedings, and was a succession or legacy tax assessed upon the right to receive the devise of said real estate under the will of George A. Hill. In assessing this tax the respondent relied upon the provisions of Section 5, Paragraph (3) of the Inheritance Tax Act of 1916, which became Section 5, Paragraph (3), Chapter 39, General Laws, 1923, which since the death of George A. Hill has been amended by Chapters 423, 426 and 464, Public Laws, 1923.

The petitioners are before us upon agreed statements of fact. From said statements the following facts appear.

The real estate which the respondent claims William W. Chapin received under the will of George A. Hill is situated on Washington street in Providence and was at the time of her death, in 1889, the homestead estate of one Sarah C. Hill of Providence. Under the will of Mrs. Hill this real estate was included in the residuary estate which she gave in trust for the benefit of her son, George A. Hill, during his

life. The will provided that the trust should terminate upon the death of George A. Hill, and upon his death the trust estate should pass to the child or children of George A. Hill then living. If he died without surviving child or children then she gave her residuary estate to such persons as George A. Hill should by will direct and appoint. In default of any child surviving him or of any such appointment by him, she made various provisions for the disposition of the trust estate. Among them was the following with reference to the real estate in question: "To my nephew, William Waterman Chapin, my said homestead estate where I now reside to him and his heirs to his and their own use forever." George A. Hill died February 17, 1922, never having married. He left a will which was duly probated in the County of Worcester in the Commonwealth of Massachusetts and which has been duly filed and recorded in the Municipal Court of Providence. In said will he provided as follows: "Twelfth. I give and devise to my said cousin, William Waterman Chapin, of Providence, in the State of Rhode Island, my homestead estate on Washington street in said Providence where I formerly resided, to him and his heirs to their own use and behoof forever." From other language contained in the will it is clear that the testator by this provision intended, with respect to said real estate, to exercise the power of appointment given to him in the will of his mother Sarah C. Hill.

In the consideration of these petitions the first question presented is as to the source from which William W. Chapin received the real estate in question. Was it by transfer under the will of Mrs. Hill or by transfer under the will of her son George A. Hill? In accordance with former decisions of this court Mr. Chapin upon the death of Mrs. Hill by reason of the provisions of her will received a vested interest in said land subject to be divested upon the death of her son leaving a child or children surviving, and further subject to be divested in the event that the son left no surviving children, but in his will exercised the power of appoint-

ment conferred by the will of his mother.  *Moore* v. *Dimond*, 5 R. I. 121, at 129; *Grosvenor* v. *Bowen*, 15 R. I. 549. Under somewhat analagous provisions of a will it was held in *Kenyon, Petitioner*, 17 R. I. 149, that a devise of a remainder after an equitable life estate was vested at the testator's death although the trustees were empowered to use the whole or any part of the trust estate during the life of and for the benefit of the equitable life tenant.  Upon the death of Mr. Hill neither of the contingencies named in the will of his mother arose and the vested interest of Mr. Chapin in the land, which had been in him since the death of Mrs. Hill, remained undisturbed.  It is a recognized rule of the common law that a bequest which comes to a beneficiary through the exercise of a power of appointment or by reason of a failure of its exercise is a gift to the beneficiary from the creator and not from the donee of the power.  It does not appear to us that the provisions of the Inheritance Tax Law, which we shall consider later, were intended to vary this rule of the common law.  We hold that under the will of Mrs. Hill the real estate vested in right in Mr. Chapin at the time of her death, and that later it vested in him in possession and enjoyment.  The privilege of entering into possession under the latter vesting is also referable to the will of Mrs. Hill and was derived from her; but it did not come to Mr. Chapin until the death of the son, George A. Hill, and then through the conduct of the son in failing to appoint the remainder to a person other than Mr. Chapin.

The testamentary provision in the will of George A. Hill which purports to exercise the power of appointment did not have that effect.  Mr. Hill had control over the remainder, in case he died childless, either by the exercise of the power to transfer the estate by testamentary provision, not to Mr. Chapin, but to some other person, or by refraining from its exercise.  We find that in law he did the latter. Nevertheless the succession passed through the conduct of Mr. Hill effective at his death.

In the agreed statement of facts it appears "that after the death of George A. Hill the said William W. Chapin during his life expressly declared that he inherited and received the said homestead estate from his aunt, Sarah C. Hill, and not from his cousin George A. Hill." Such declaration by Mr. Chapin appears to us to be of no moment. He might have refused to receive the gift altogether. But as he accepted it, he must be held to have taken it from the source from which in law the gift came. We hold that the gift in question was received from Mrs. Hill through the conduct of her son because of the legal effect of the provisions of the wills of Mrs. Hill and her son, and not by reason of an election on the part of Mr. Chapin. Neither could Mr. Chapin by an election vary the proper application of the provisions of the Inheritance Tax Laws.

The respondent contends that although we may find that there was the transfer of a vested interest to Mr. Chapin under the will of Mrs. Hill, nevertheless for the purpose of taxation under the Inheritance Tax Act of 1916 it should be deemed a transfer from George A. Hill. This claim is urged on the strength of the following provisions of said act, now Section 5, Paragraph (3), Chapter 39, General Laws, 1923 (amended since the death of George A. Hill by Chapters 423, 426 and 464, Public Laws, 1923): "(3) Whenever any person shall exercise a power of appointment, derived from any disposition of property made whether before or after the enactment of this chapter, such appointment when made shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor in whole or in part, a transfer taxable under the provisions of this chapter shall be deemed to take place to the extent of such omission or failure, in the same manner as though

the person thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, and shall take effect at the time of such omission or failure." The two distinct provisions contained in the paragraph we shall hereafter in this opinion refer to respectively as the first and the latter provision of paragraph (3). From the language of paragraph (3) just quoted we hold that it was the intent of the General Assembly in the circumstances appearing in the agreed statement of facts to impose under said Section 5 a succession or legacy tax upon the right of William W. Chapin to receive the real estate in question at the death of Mr. Hill with the same incidents respecting the rate of tax, the time of its payment, and otherwise as though the estate had been the absolute property of George A. Hill and the right of possession and enjoyment had come to the beneficiary by devise from George A. Hill, and this notwithstanding that the beneficiary had received from Sarah C. Hill a vested interest in the real estate before the enactment of inheritance taxation in this State.

As to the estate tax, the abatement of which is sought in the first of the above entitled proceedings, we are not warranted in declaring from paragraph (3) nor from other provisions of the Inheritance Tax Law as it existed at the death of Mr. Hill, a legislative intent in these circumstances to impose an estate tax under Section 1 of the act upon the right to transfer said real estate. Estate taxes are imposed under Section 1, and it appears in the notice given by the respondent that the estate tax here in question was assessed solely under Section 1. The essential portion of Section 1 is as follows: "Section 1. A tax shall be and is hereby imposed upon the net estate of every resident decedent, and upon the net estate of every non-resident decedent consisting of real property located within this state, or any interest therein, as a tax upon the right to transfer. Such tax shall be imposed at the rate of one-half of one per centum upon

the excess value of each said estate over five thousand dollars." The real estate in question was not in fact or in law a part of the net estate of George A. Hill at his death. The General Assembly did not incorporate in Section 1 any words of legal fiction to the effect that, for the purpose of imposing an estate tax, property to which a power of appointment relates shall be deemed to be a part of the net estate of the donee of the power. We do not overlook the language of said paragraph (3) to the effect that an appointment under a power or the omission or failure of a donee of a power to make an appointment thereunder "shall be deemed a transfer taxable under the provisions of this chapter." If in the circumstances of this case an estate tax is imposed by the statute it is not under the language of Section 1 but solely by inference from this language in paragraph (3) of Section 5 or from certain provisions in Section 2 of the act, which latter provisions we will consider hereafter. The fair construction of the language in paragraph (3) is that such exercise or failure to exercise the power should be deemed a "transfer" taxable under the provisions of the chapter so far as such provisions relate to succession or legacy taxes. That the language quoted from Section 5, viz., "shall be deemed a transfer taxable under the provisions of this chapter," does not have reference to or include estate taxes and does not impose them even by inference is shown by the provisions of sections 6, 7 and 8 of the act. Section 6 provides that "all taxes imposed by section five of this chapter shall be assessed by the board of tax commissioners upon the full and fair cash value of the property transferred at the rate hereinafter described." In sections 7 and 8 the rate of legacy taxes is set forth varying in amount in accordance with the degree of relationship of the beneficiary to the decedent. That the respondent did not regard the estate tax which it has assessed as one authorized by Section 5 is shown by the rate of the assessment which was the flat rate of one-half of one per cent provided for in Section 1. It should also be borne in mind that the language of paragraph

(3) of Section 5 first appeared in the New York act of 1897. It was copied nearly verbatim and with precisely the same effect into the Massachusetts statute of 1909 and was then incorporated in the Rhode Island act of 1916. In the New York and Massachusetts acts the language which we are considering related solely to legacy taxes as the inheritance tax laws of neither of those states imposed an estate tax.

As to the provisions of Section 2, which relate to the assessment of an estate tax, we say: that to warrant a finding that it was the intent of the General Assembly to impose the estate tax in question at the death of the non-resident George A. Hill it must be found that the subject of the tax or some interest therein was a part of his net estate. George A. Hill did not exercise the power of appointment and we have said above neither the real property nor any interest therein was in law or in fact a part of his net estate. Neither can we find in the language of the act such a clear legislative intent to treat it as a part of his net estate as to permit a construction of the act which will support the assessment. Section 2 of the act provides the method for finding "the value of the net estate of a non-resident decedent for the assessment of the tax imposed by Section 1," and directs that such value "shall be ascertained by taking the full and fair cash value of the real property located in Rhode Island and any interest therein including such real property and interest in real property as are described in paragraphs 2, 3 and 4 of Section 5 of this act. In the consideration of this question we are not interested in the property described in paragraphs 2 and 4 of Section 5 of the act but merely in such property as may be described in the latter portion of paragraph (3). The purpose of this portion of Section 2 is to find "the value of the net estate of a non-resident decedent." The value of the property described in the latter portion of paragraph (3) is unrelated to the purpose of Section 2, unless such property can be connected in some way with the non-resident decedent's net estate. It may be conjectured that it was the intent of the

General Assembly to include in such net estate, in Rhode Island, property in which he had no legal interest but as to the succession to which he had failed to make an appointment under a power. The intent thus to burden a decedent's estate with the payment of an inheritance tax upon the transfer of property which was not his, and did not pass under his will or by the statutes of descent, is so unreasonable and unjust that we will not find the intent upon conjecture, but will require that the purpose be explicitly declared. A reference to paragraph (3) discloses that the property to which an appointment relates is not specifically, by the use of legal fiction nor by legislative fiat described or made a part of the net estate of the donee of a power who had omitted or failed to exercise the same. The purpose of paragraph (3) is to fix a legacy tax upon the transfer of property to the appointee of the donee of the power or to the person who takes in default of an appointment. The language employed in aid of that purpose falls short of the expression of an intent to describe "the property to which such power relates" or any interest therein as belonging to or constituting a part of the net estate of the donee of the power.

After the decease of George A. Hill the General Assembly by Chapter 426, Public Laws, 1923, amended Section 1 of the Inheritance Tax Act of 1916 and specifically imposed an estate tax "upon the net estate of every non-resident decedent consisting of real property located within this State or any interest therein, or consisting of tangible or intangible personal property over which said non-resident decedent exercised or omitted or failed to exercise a power of appointment if said power was derived from a resident decedent of Rhode Island." . . . If George A. Hill had deceased subsequent to the passage of this amendment there might be found from its terms a legislative intent to authorize the assesssment of an estate tax upon the right to transfer said real estate. This amendment in the absence of language indicating a different intent should be taken as

the legislative declaration of a change in the law relating to estate taxes rather than as a legislative construction of the original act. Doubts as to the construction of laws of this character are to be resolved in favor of the taxpayer. The legislative intent to impose the burden of a tax is not to be found by implication nor conjecture. Before approving an assessment a court may well require that its authorization be clearly and explicitly expressed in the law. From the foregoing consideration we are of the opinion that the assessment of the estate tax in question was not warranted by the statute in force at the death of Mr. Hill.

It is the contention of the petitioners that the provision of paragraph (3), Section 5, in so far as it assumes to treat the vested interest of Mr. Chapin derived from Sarah C. Hill before the passage of the Inheritance Tax Act of 1916 as an estate to which he had succeeded upon the death of George A. Hill is an attempt on the part of the General Assembly to give a retroactive effect to the act and that, in so far, the act is unconstitutional, violating Article I, sections 12 and 16 of the Constitution of this State, and the Fourteenth Amendment to the Federal Constitution.

In this claim of unconstitutionality the petitioners rely largely upon the authority of the New York Court of Appeals in *Matter of Lansing*, 182 N. Y. 238, and the New York cases following it. As we have said above the language of paragraph (3) is identical with a provision of the New York law enacted in 1897, which was copied nearly verbatim into the Massachusetts law in 1909, and made a part of our law in 1916. The constitutionality of the latter provision of paragraph (3) was questioned in *Matter of Lansing (supra)*. The court in *Matter of Lansing, (supra)*, sustained the claim of unconstitutionality. In 1911, the New York legislature (Chapter 732, Laws of New York, 1911), in an amendment to the Inheritance Tax Law of that state, omitted the latter provision of paragraph (3). The opinion in *Matter of Lansing, supra*, proceeded upon the construction that it was the intent of the language of paragraph (3) to impose a

tax upon the transfer of a vested interest although it passed at the death of the donor of the power before the enactment of the Inheritance Tax Act. The petitioners urge that we should be governed by the decision in *Matter of Lansing, supra,* on the principle enunciated in *Sayles* v. *Bates,* 15 R. I. 342, and *R. I. Trust Co.* v. *Dunnell,* 34 R. I. 394, to the effect that in the absence of strong reason to the contrary the construction given to a foreign statute in the jurisdiction of its origin will also be adopted when the statute itself is copied into our law. In the matter before us the application of this principle in the manner which the petitioners seek is not warranted. When in 1916 this language was adopted by the General Assembly of Rhode Island it had been held to be unconstitutional in New York and had been stricken from the New York act. It did, however, remain in the Massachusetts statute and had been declared constitutional in *Minot* v. *Treasurer,* 207 Mass. 588, decided in 1911. The provision under consideration may well be regarded as taken into our law from the Massachusetts statute, impressed with the construction given to it in *Minot* v. *Treasurer.* The application of the principle invoked by the petitioners would not be favorable to their position.

We do not agree with the construction placed upon paragraph (3) by the New York courts. The provision does not have the retroactive effect of reaching back, before the time of its enactment, and imposing a tax upon the vested interest given to Mr. Chapin by the will of Sarah C. Hill. It is in effect a tax upon the new right which came to him at the death of George A. Hill without appointing the remainder to a person other than Mr. Chapin. This was the right to enter into possession and enjoyment of the estate at the termination of the particular estate which until the death of Mr. Hill was vested in no one. It awaited his death, and his exercise or failure to exercise the power, before it could descend and vest. In our opinion this right of possession and enjoyment coming to Mr. Chapin after the enactment of the Inheritance Tax Act is a proper subject

for taxation within the broad power of the State in that regard.

The particular provisions of the State constitution which the petitioners claim have been violated by the latter portion of paragraph (3) are Article I, sections 12 and 16. These are as follows: "Section 12. No *ex post facto* law, or law impairing the obligation of contracts, shall be passed." "Section 16. Private property shall not be taken for public uses without just compensation."

The provision in question does not come within the designation of an "*ex post facto* law" since it does not deal with crime. It is only to such laws as "retroact criminally" that Section 12 of our constitution refers in the inhibition of "*ex post facto* laws". *State* v. *Paul*, 5 R. I. 185; *Stokes* v. *Rodman*, 5 R. I. 405; *Opinion to the Governor*, 43 R. I. 421, at 426.

Neither does the provision in question impair the obligation of a contract. Support might be found for a claim that a tax assessed upon the right of Mr. Chapin to receive the vested interest under the will of Mrs. Hill, imposed by a law enacted subsequent to her death, impaired in some sense the obligation of the contract under which Mr. Chapin held that interest. In *Matter of Dorrance Street*, 4 R. I. 230, at 245. Such contractual relation, however, if it existed, was not affected nor was its obligation impaired by the passing of this law; for in the view which we take of the law the thing taxed was solely a right or privilege which came to Mr. Chapin after the enactment of the tax law. A similar question was before the court in *Moffitt* v. *Kelley*, 218 U. S. 400, upon a claim that a provision of the Inheritance Tax Law of California violated the contract clause of the Federal constitution. The California Supreme Court had approved the imposition of an inheritance tax upon the interests of a widow in the community property of herself and her deceased husband. That interest, though vested during the life of the husband and before the enactment of the law, came to the widow in enjoyment upon his death after its

enactment. In that case, with more reason than appears in the one at bar, the claim was made that the vested interest of the wife in the community property arose from a contractual relation between husband and wife under the California law. The court did not question the claim of a contract but held that "even although the wife's right in the community property was a vested right which could not be impaired by subsequent legislation, it was, nevertheless, within the power of the State, without violating the Constitution of the United States, in selecting objects of taxation, to select the vesting in complete possession and enjoyment by wives of their shares in community property consequent upon the death of their husbands."

Section 16 has been referred to as the specific provision in our constitution designed to safeguard property rights in condemnation proceedings. *Joslin Mfg. Co.* v. *Clarke,* 41 R. I. 350. *In Opinion to the Governor,* 34 R. I. 191, at 198, however, the justices of the court have approved the principle that this section "is not a limitation on the taxing power, but it is held to guard against illegal exactions disguised under the name of taxation." In the absence of a specific constitutional prohibition the privilege of coming into the possession of a remainder through the exercise or the failure to exercise a power of appointment is well within the legal exercise of the very extensive taxing powers of a sovereign state to select and classify subjects for taxation. It cannot properly be held to be an illegal exaction on the part of the State.

Under the petitioners' broad claim that this portion of the inheritance tax law violates the Fourteenth Amendment to the Constitution of the United States we understand them to refer to those provisions of the Fourteenth Amendment known as the due process and the equal protection clauses, included in Section 1 of the Amendment.

The tax law in question derived its authority from the inherent power of the State to impose taxes. It operates alike upon all in the same condition. The classification of

the subject of taxation is not so narrow as to be capricious or arbitrary. Provision is made for notice to the taxpayer with the right of appeal from the assessment. If not otherwise illegal it cannot fairly be said to conflict with the due process clause of the Federal constitution. The court said in *Palmer* v. *McMahon*, 133 U. S. 660, at 669. "The power to tax belongs exclusively to the legislative branch of the government, and when the law provides for a mode of confirming or contesting the charge imposed, with such notice to the person as is appropriate to the nature of the case, the assessment cannot be said to deprive the owner of his property without due process of law."

Nor does paragraph (3) violate the equal protection clause of the Federal constitution. It does not impose a burden upon the petitioners differing from that placed on all other persons in like circumstances. In *Matter of Dorrance Street*, 4 R. I. 230, at 250, the court said: "All taxation is more or less unfair and in any proper sense even unequal." An analysis of the provisions which we are considering and a critical consideration of their operation may justify a claim that exact equality in distributing the burdens of the State is not obtained thereby, but in a broad practical consideration of the question, and upon the application of established principles and practice in taxation the provisions do not offend against the requirement of equality prescribed in the Fourteenth Amendment. In *Bell's Gap. R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, at 237, the court said: "The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways." . . . "We think we are safe in saying that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation." See *Keeney* v. *New York*, 222 U. S. 525.

In *Minot* v. *Treasurer*, 207 Mass. 588, the court decided that a provision essentially identical with that contained in

the latter portion of paragraph (3) did not violate either the contract, due process or equal protection clause of the United States Constitution. In that case a remainder had vested in right before the enactment of the provision. The court held, that when, after such enactment, succession vests in possession through the will or conduct of the donee of a power it is within the power of the legislature to say that a tax shall be imposed upon such succession. See *Burnham* v. *Treasurer*, 212 Mass. 165; *Montague* v. *State*, 163 Wis. 58.

The petitioners seek to distinguish the Massachusetts cases on this subject from the case at bar, and press in argument the difference between the Massachusetts act and that of Rhode Island in the general scheme of inheritance taxation, and particularly in reference to the time when the tax is imposed. This difference is shown in the construction placed by the courts of the two states upon their respective statutes. In *Hazard* v. *Board of Tax Commissioners*, 43 R. I. 431, at 449, in the case of an ordinary succession, we have discussed that difference as it affects the measure of the value of a legacy for the purpose of taxation. As to the tax which we are now considering the statutes of the two states are practically idential. The construction which we have placed upon the statute accords with the Massachusetts construction, and the decisions of that state may fairly be considered as authorities in support of our conclusion.

As to the first of the above entitled proceedings asking for the abatement of the estate tax we find that the imposition of the tax was not warranted under the provisions of the act and the tax should be abated. In the other proceeding we find that the succession tax was legally assessed and the petition should be denied.

On February 11, 1925, the parties may present in each petition a form of decree in accordance with this opinion, and thereafter, when the forms of decrees have been approved, the papers in each case with its respective decree certified thereon will be sent back to the Superior Court with direction to enter the decree as a final decree in the petition.

RATHBUN, J. I heartily concur with the majority in the conclusion reached by them that the succession tax is valid but I am unable to subscribe to the finding that the legislature failed to express an intention to authorize the assessment of an estate tax upon the same property.

Section 1 of the Tax Act of 1916 imposes a tax upon the net estate of non-resident decedents "consisting of real property located within this state, or any interest therein, as a tax upon the right to transfer." Section 2 of said act, as amended by Chapter 1946 of the Public Laws of 1920, contains the following provision relative to ascertaining the value of the net estate which is subject to the tax imposed by said Section 1: "The value of the net estate of a non-resident decedent for the assessment of the tax imposed by Section 1 of this act shall be ascertained by taking the full and fair cash value of the real property located in Rhode Island, and any interest therein, including such real property and interests in real property as are described in paragraphs 2, 3 and 4 of Section 5 of this act." If we examine paragraph 3 of said Section 5 we find described precisely the kind of property which we have under consideration, that is, property subject to a power of appointment with the donee of the power of appointment omitting and failing to exercise the power. Excepting our use of italics said paragraph 3 is as follows: "Whenever any person shall exercise a power of appointment, derived from any disposition of property made whether before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor in whole or in part, a *transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omission or failure,* in the same manner as though the

person thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, and shall take effect at the time of such omission or failure." Of course, the remainder in question was not the property of the donee of the power but said paragraph 3 provides that, "a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omission or failure" and said Section 2 directs that, in ascertaining the value of the estate which is subject to an estate tax, the property described in said paragraph 3, that is, property subject to a power of appointment, shall be included in the list of property of the non-resident decedent, even when the power is not exercised. I can see no escape from the conclusion that the legislature intended to impose an estate tax, as well as a succession tax, upon the property in question but whether the statute by which that intention is expressed is constitutional as applied to the facts in this case I express no opinion.

*Tillinghast & Collins, James A. Tillinghast,* for petitioner.

*Herbert L. Carpenter, Attorney General, Harold W. James,* for respondents.