258 Cal.App.2d 262 (1968)
Estate of HORACE M. DOBBINS, Deceased. SUZANNE D. PHILLIPS, Objector and Respondent,
v.
HOUSTON I. FLOURNOY, as State Controller, etc., Claimant and Appellant.
Civ. No. 31508. 
California Court of Appeals. Second Dist., Div. Three. 
Jan. 25, 1968.
 Joseph D. Lear, Walter H. Miller and Margaret Groscup for Claimant and Appellant.
 Gifford, Wyse & Humphreys and Sidney H. Wyse for Objector and Respondent.
 MOSS, J.
 The Controller of the State of California appeals from an order sustaining the objection of the children of the decedent to the report of the inheritance tax appraiser and fixing the inheritance taxes payable upon the interests passing from the decedent to his children.
 The question presented by this appeal is whether Horace M. Dobbins, the decedent herein, "exercised" the power of appointment bequeathed to him by his father within the meaning of Revenue and Taxation Code, section 13693 as it read in 1962, by reason of the fact that each of the appointees named by the decedent took only the share which he would have taken in default of appointment.
 The father of the decedent, Richard J. Dobbins, died in 1893 while domiciled in Pennsylvania. Under the will of Richard J. Dobbins, [fn. 1] a portion of the residue of his estate was left in trust for the benefit of each of his five children including Horace, the decedent herein, and each child was given a power of appointment over the trust assets reserved for his benefit. The language in the will with respect to these powers of appointment was identical as to each child of Richard. The provision of the will pertaining to Horace provides, "... and upon the death of my said son Horace M. then in trust as to said one half of the one fifth part of the balance of my residuary estate to pay and distribute the same to and among the children of my said son Horace M. in such manner as he may *264 by will appoint and in default of such will then in trust to pay and distribute the same to and among the children of my said son Horace M. equally and in default of any such child or children then to hold the same in trust for the same uses as are declared of and concerning the remaining four fifths parts of the balance of my said residuary estate."
 Horace M. Dobbins died on September 20, 1962, domiciled in Los Angeles, California. He was survived by four children, all of whom were alive at the time that the objections to the report of the inheritance tax appraiser were heard. Horace M. Dobbins left a will which provided in part,
 "Third: I give, devise and bequeath the whole of my estate, real, personal and mixed, of whatsoever nature, kind or description, and wheresoever situate, including all property in trust or otherwise over which I have or may have power of appointment, to my said children, Dorothy D. Freeman, Marjorie D. Kern, Suzanne D. Phillips and Richard J. Dobbins, share and share alike."
 "In the event any of my said children shall predecease me, or in the event we die in a common catastrophe, or in the event any of them shall fail to survive distribution of my estate, then I give, devise and bequeath said deceased child's share to the living issue, if any, of said deceased child, otherwise to the survivors of my said children."
 The assets of the trust as of the date of death of Horace M. Dobbins consisted wholly of stocks, bonds and cash, which were in the custody of a Pennsylvania bank.
 The trust created under the will of Richard J. Dobbins was terminated and its assets distributed to Horace's four children by order of a Pennsylvania court which made no reference to the will of Horace.
 The California inheritance tax appraiser's report included as a taxable transfer by Horace to each of his four children under Revenue and Taxation Code, section 13693 [fn. 2] one-fourth of the market value of the assets held in trust in Pennsylvania under the will of the decedent's father.
 Following a hearing on the report and objection the trial court excluded the Pennsylvania trust assets from the property subject to tax and fixed the tax at $3,414.48 based upon the market value of the property in the probate estate. The trial court made a finding, "That the passage of said assets so *265 held in trust to the children of the decedent pursuant to the will of Richard J. Dobbins did not involve any beneficial succession of interest from the decedent to the children and was not, and is not, a transfer subject to the inheritance tax law."
 At the date of Horace's death the pertinent provisions of the inheritance tax law concerning the taxation of powers of appointment were contained in sections 13692 and 13693. Section 13692 provided, "Except as otherwise provided in this article, a gift of a general or limited power of appointment made in conjunction with a disposition of property effected before or after 5 p.m. of June 25, 1935, is a transfer subject to this part from the donor to the donee at the date of the donor's death." Section 13693 provided, "Where a general or limited power of appointment given in conjunction with the disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date, is exercised after that date by the donee, the exercise of the power is a transfer subject to this part from the donee to the person appointed at the time of the exercise, as though the property to which the power relates belonged absolutely to the donee and is transferred by him by will." [fn. 3]
 Appellant contends that section 13693 means just what it says and that since the decedent exercised the power by will the interests passing thereby are taxable even though under concepts of property law, if the total property passing to an appointee is identical to his interest in default of appointment, the property passes in default of appointment.
 Respondents, relying on Estate of Murphy, 182 Cal. 740 [190 P. 46], contend that Horace did not exercise his power of appointment within the meaning of section 13693 even though by his will he purported to dispose of all of his property, "including all property in trust or otherwise over which I have or may have power of appointment," because his will provided for the same disposition of the trust property that would have obtained in default of any exercise of the power.
 Although Estate of Murphy, supra, arose in a different factual and statutory context than we here consider, we hold that the reasoning of the court therein, when considered in the *266 light of the legislative history of section 13693, both before and after 1962, is controlling in this case.
 In 1920, when Estate of Murphy, supra, was decided, the California inheritance tax law, as amended in 1917, provided that the exercise of a power of appointment was deemed to be a transfer from the donee to his appointees. To this extent the law was the same as section 13693 with respect to gifts of a power of appointment made before June 25, 1935. The 1917 amendment also expressly provided that the nonexercise of a power of appointment was deemed to be a taxable transfer by the donee of the power to the persons who became entitled to the possession or enjoyment of the property which was subject to the power in default of appointment. [fn. 4] Between 1913 and 1917 powers of appointment were taxed as a transfer from the donor of the power to the donee in the same manner as they were under the 1935 amendment. (Stats. 1913, ch. 595, 3 p. 1068; Stats. 1935, ch. 358 2, p. 1269.)
 In Estate of Murphy, supra, 182 Cal. 740, the decedent in 1912, while a nonresident of California, conveyed his property in trust retaining a life estate in the income and a testamentary power of appointment over the remainder, and designating the persons to take in default of appointment. The decedent died in 1915, a resident of California, leaving a will which contained a clause directing that the provisions of the trust agreement of 1912 be carried out. The conveyance of 1912 was taxable as a transfer of a remainder subject to a life estate reserved by the grantor unless, as the remaindermen contended, they did not take the property as remaindermen under the conveyance of 1912, but rather derived their title from the power of appointment under the will. In such case, there would have been no tax since, between 1913 and 1917, *267 powers of appointment were subject to inheritance tax only as gifts from the donor of the power to the donee. The question arose as to whether the clause in the will directing that the trust provisions be carried out constituted an exercise of the power. In holding that it need not answer that question the court equated the exercise of a power in favor of the persons who would take upon default of appointment with nonexercise of the power. The court said, "It is not necessary for us finally to determine whether this confirmatory clause amounted to the exercise of the power of appointment or is to be treated as a failure to exercise the power. In either event the result is the same. If it is to be treated as the exercise of the power of appointment it is controlled by the views expressed in Matter of Lansing, cited below; and if it is to be treated as a failure to exercise the power of appointment then the vested defeasible remainders created December 17, 1912, became indefeasible by the decedent's failure to exercise the power of appointment."
 "Matter of Lansing, 182 N.Y. 238 [73 N.E. 882], involved property in which a mother had a life estate with remainder to her daughter, subject to the right of the mother to dispose of the property by the exercise of a power of appointment in her will. At her death the mother left a will in which she exercised the power of appointment by devising the property to her daughter. The court said that 'the execution of the power left the title where it was before, and the result is the same as if there had been no power to exercise.'"
 "Speaking of the effect of the exercise of the power upon the title which the daughter had during the mother's life, the court said: 'While the situation was subject to change under the power of appointment, no change was made. Although the power was exercised in form, her title was perfect without it, and she derived no benefit from it. The power was to "dispose of the remainder," and the remainder was not disposed of but continued where it was. The attempt to execute the power was not effective because it did nothing. The exercise of a power which leaves everything as it was before is a mere form with no substance.' " [fn. 5] (Estate of Murphy, supra, 182 Cal. 740, 745.) *268
 The reasoning of the court and the decision in Matter of Lansing were approved and followed by the Supreme Court of the United States in Helvering v. Grinnell (1935) 294 U.S. 153 [79 L.Ed. 825, 55 S.Ct. 354]. There the power involved had been created by the will of a prior decedent with a gift in default of appointment to the donee's children or issue, and in default of issue to the donee's next of kin. The donee had no issue and her two sisters were her sole next of kin. She left a will which in express terms appointed the property to the two sisters in equal shares. The federal estate tax law then in effect (section 302(f) of the Revenue Act of 1926, U.S.C. title 26, 1094) provided for the taxation of all property "To the extent of any property passing under a general power of appointment exercised by the decedent. ..." In Grinnell, the power of appointment considered was a general power and it was exercised. The question which the court had to decide was whether any property "passed" under the exercise of the power. [fn. 6] (A similar question is presented in the case at bar by reason of the fact that the California inheritance tax reaches only transfers of property subject to the law. (Section 13401) "Transfer" is defined as "the passage of any property ... in possession or enjoyment. ...") The Supreme *269 Court held, relying on the reasoning of Lansing, that nothing happened as a result of the exercise of the power, and therefore concluded that nothing "passed" with the consequence that no tax was due. (294 U.S. at pp. 156-157 [79 L.Ed. at pp. 828-829].) [fn. 7]
 The Supreme Court of Illinois adopted similar reasoning when recently presented with the identical problem that we consider here. (Cook v. Dove (1965) 32 Ill.2d 109 [203 N.E.2d 892].) In that case a widow was given a general testamentary power of appointment over trust assets following her life estate and appointed in equal shares to her two children, who would have taken the property in the absence of such an appointment. The Inheritance Tax Act of Illinois provided for a tax whenever any person "shall exercise a power of appointment derived from any disposition of property. ..." As in section 13693 no provision was made in the Illinois statute for the taxation of the nonexercise of a power. (Ill. Rev. Stat. 1961, ch. 120, par. 375(4).) The court held that the appointed property was not taxable, resting its decision largely upon the reasoning and decision in Matter of Lansing, supra, 182 N.Y. 238 [73 N.E. 882]. The same view is also adopted by the Restatement of the Law of Property. ( 369, illus. 4.)
 We have found no case, and none has been called to our attention, which has held, under a statute which purported to tax only the exercise of a power of appointment, that the exercise in favor of the takers upon default of exercise is a taxable transfer.
 In 1929, the California inheritance tax law was amended to eliminate the provision which treated the nonexercise of a power of appointment as a taxable transfer to the persons who became entitled to take in default of appointment. (Stats. 1929, ch. 844, 2, pp. 1836-1837.) The 1929 amendment brought the California statute into conformity with the federal estate tax law to the extent that the latter also provided for the taxation of property passing under a power of appointment only when the power was exercised by the decedent. [fn. 8] *270 The 1929 amendment was carried over to section 13693. [fn. 9]
 [1] A statute is presumed to have been enacted in the light of existing laws and such judicial decisions as have a direct bearing on it. (Buelke v. Levenstadt, 190 Cal. 684, 688-689 [214 P. 42]; Estate of Moffitt, 153 Cal. 359, 361 [95 P. 653, 1025, 20 L.R.A. N.S. 207].) [2] Thus, the Legislature is presumed to have enacted the 1929 amendment eliminating the nonexercise of a power as a taxable transfer with full knowledge that under accepted principles of property law the taker in default of the exercise of a power of appointment has a vested interest subject only to being divested by the exercise of the power, (Civ. Code, 781; Gray v. Union Trust Co., 171 Cal. 637, 642 [154 P. 306]) and therefore that the interest of a taker in default of exercise derives from the donor of the power rather than the donee. (See Rest. of the Law of Property, supra, 369.) We must also assume that the Legislature was aware of the decision in Estate of Murphy, supra, 182 Cal. 740, which equated the exercise of a power in favor of the takers upon default of exercise with failure to exercise the power because the practical effect in each case is the same under principles of property law. [fn. 10] We are justified in concluding, therefore, that the Legislature intended, when it amended the law in 1929 to eliminate the transfer of property upon the nonexercise of a power as a taxable event, that the exercise of a power of appointment which does nothing to change the estates vested in the persons who would have taken upon failure to exercise is not to be treated as a transfer subject to inheritance tax. *271
 This conclusion is consistent with the intention of the Legislature expressed in the 1965 amendments to the inheritance tax law. (Stats. 1965, ch. 1070, 5, pp. 2716-2717.) The 1965 amendments added statutory definitions of "general" and "limited" powers of appointment. A "general" power of appointment is defined, with certain exceptions not material here, as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." (Present 13692.) A "limited power of appointment" is defined as "a power which does not qualify ... as a general power of appointment." (Present 13693.) The power given to the decedent herein was a limited power.present section 13695, enacted in 1965, as to limited powers created before June 25, 1935, and exercised thereafter, retains the language of former section 13693 to the effect that only the exercise of such power is deemed to be a taxable transfer. As to general powers, however, the Legislature provided for the first time since 1929 that both the exercise and nonexercise thereof are deemed to be taxable transfers. (Present 13696. [fn. 11]) Thus, as to general powers the Legislature rendered moot the question presented by this case. In making this differentiation as to the inheritance tax treatment of the failure to exercise general and limited powers of appointment, the Legislature was presumably aware of the large body of authority which holds that exercise in favor of the takers on default of appointment is the equivalent of failure to exercise. (Estate of Moffitt, supra, 153 Cal. 359, 361.) Therefore, presumably the Legislature intended that, as to limited powers, such exercise should not be deemed a transfer subject to inheritance tax. [fn. 12]
 [3a] There remains for consideration appellant's contention that even if we hold that the reasoning of Estate of *272 Murphy, supra, and Matter of Lansing, supra, is still good law in California we should hold the transfers to Horace Dobbins' children subject to tax because Horace's will appointed the trust property in a different manner than that provided by the will of his father. It will be recalled that Richard Dobbins' will gave Horace the power to appoint among Horace's children. Appellant's contention rests upon the second paragraph of Article Third of Horace's will (quoted above at p. 264), which provides that the living issue of any child of Horace who does not survive distribution of his estate shall take the share of such deceased child. Since Horace's estate has not yet been finally distributed, appellant argues that it is still possible that the trust property will be distributed in a manner different from that provided by the will of Richard Dobbins.
 [4] An appointment by the donee of a limited power of appointment is ineffective to the extent to which an appointment is made to a non-object of the power. (Rest. of the Law of Property, 351; 1 Scott, The Law of Trusts (3d ed.) p. 180.) [5] It is well settled that unless a contrary intention appears from the terms of the will or from extrinsic evidence the word "children" in a will does not include "grandchildren." (In re Steinmetz's Estate, 194 Pa. 611 [45 A. 663, 665]; Appeal of Hunt, 133 Pa. 260 [19 A. 548, 549, 19 Am.St.Rep. 640]; see Horwitz v. Norris, 49 Pa. 213, 218; Estate of Willson, 171 Cal. 449, 456 [153 P. 927]; Annot. 104 A.L.R. 282.)
 [3b] This contention of appellant overlooks the last clause of the provision of Richard's will (quoted earlier in this opinion at pp. 263-264) to the effect that if Horace should die without child or children, the share of Horace should be added to the trusts for the other children of Richard. Richard's will thus, by its terms, implies that the power given to Horace could be exercised in favor of Horace's children, but not Horace's grandchildren.
 Even so, appellant argues, the appointment by Horace should be regarded as effective for inheritance tax purposes because under Horace's will each of his children was to receive a gift conditioned upon the appointee's survival to distribution of Horace's estate, whereas under the substitutional gift provided for by Richard's will, each child of Horace was to receive at Horace's death an estate in fee simple absolute. This argument is premised upon the rule that where one part of an appointment is ineffective (the appointment to *273 Horace's grandchildren) but another part (the appointment to Horace's children conditioned upon survival to distribution) would, if standing alone, be effective, the valid part is to be given effect unless the donee's scheme of disposition is more closely approximated by allowing both parts to pass as in default of appointment. (Restatement of The Law of Property, 362; 1 Scott, supra, (3d ed.) p. 180.) We find this argument unpersuasive because as we read Horace's will his scheme of disposition is more closely approximated by treating the trust property as passing in default of appointment by Horace. The provision in Horace's will appointing to the children of any deceased child of Horace indicates Horace's intent to direct a per stirpes distribution among his issue. If any child of Horace dies before distribution of his estate this intent would be thwarted if Horace's exercise of the power were to be regarded as partially effective since the result would be to effect a per capita distribution among his issue. On the other hand, if the trust property is deemed to pass in default of appointment, Horace's intent is closely approximated because under Richard's will, the trust property became vested in Horace's children at Horace's death and if any child dies prior to distribution of the estate, the property will pass to the heirs of that child.
 Therefore, to the extent that Horace attempted to appoint the trust property other than to his children living at the date of his death in fee simple absolute, the appointment was a nullity and cannot be regarded as effecting a transfer that is subject to inheritance tax.
 The order is affirmed.
 Ford, P. J., and Cobey, J., concurred.
NOTES
[fn. 1] 1. On our own motion we have ordered that the record be augmented to include a copy of the will of Richard J. Dobbins admitted in evidence below as petitioners' (objectors') exhibit 2 in evidence.
[fn. 2] 2. All statutory references are to the Revenue and Taxation Code as it existed prior to the revision of the article dealing with powers of appointment in 1965. (Stats. 1965, ch. 1070, 6, p. 2716.)
[fn. 3] 3. These sections were enacted in substantially the form quoted above in 1935. (Stats. 1935, ch. 358, 2, p. 1269.)prior to 1935 (and after 1917) the California inheritance tax law made taxable the exercise of powers of appointment as a transfer of property by will from the donee of the power. (Stats. 1917, ch. 589, 2, pp. 882-883; Stats. 1929, ch. 844, 2, pp. 1836-1837.)
[fn. 4] 4. The pertinent section of the 1917 act reads as follows, "Whenever any person, trustee or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment, when made, shall be deemed a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by such donee by will; and whenever any person, trustee or corporation possessing such power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons, trustees or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."
[fn. 5] 5. The New York statute considered in Matter of Lansing treated both the exercise and the nonexercise of a power of appointment as a transfer subject to inheritance tax using language substantially similar to that used in the 1917 amendment to the California law noted in footnote 4. The actual effect of Matter of Lansing was to hold unconstitutional a tax on the nonexercise of a power created prior to the enactment of the inheritance tax act. This conclusion was rejected by the United States Supreme Court in Saltonstall v. Saltonstall (1928) (276 U.S. 260 [72 L.Ed. 565, 48 S.Ct. 225]) and by several states (see for example, Minot v. Stevens (1911) 207 Mass. 588 [93 N.E. 973, 33 L.R.A. N.S. 236]; State v. Brooks (1930) 181 Minn. 262 [232 N.W. 331]; Manning v. Board of Tax Com. (1925) 46 R.I. 400 [127 A. 865]; Montague v. State (1916) 163 Wis. 58 [157 N.W. 508]; Commonwealth v. Fidelity & Columbia Trust Co., 285 Ky. 1 [146 S.W.2d 3, 5].) The taxability of the nonexercise of a power of appointment created prior to the enactment of the inheritance tax law is not presented in this case because section 13693 as it stood after 1929 did not purport to tax the nonexercise of a power of appointment.
[fn. 6] 6. The requirement that property "pass" under a power of appointment in order to be taxable was eliminated by a 1942 amendment to the Revenue Act ( 403(d), included in the Internal Revenue Code of 1939 as section 811(f)), but the former law was continued in effect as to pre-1942 unexercised powers. Later federal decisions involving the estates of decedents who died after October 21, 1942 held that under the 1942 Act it was not necessary that the property "pass" pursuant to the exercise of a pre-1942 power, but only that the exercise occur, in order to subject the transfer to tax. (Wilson v. Kraemer (2d Cir. 1951) 190 F.2d 341, cert. den. 342 U.S. 859 [96 L.Ed. 646, 72 S.Ct. 85]; Keating v. Mayer, 236 F.2d 478.) These cases do not detract from the pertinence of Helvering v. Grinnell to the case at bar because they dealt with a statute in which the requirement had been eliminated that property "pass" pursuant to the exercise of a power. In Grinnell, as in this case, the court was presented with the question of interpreting a statute which taxed the exercise of a power only when property "passed" thereunder.
[fn. 7] 7. In the Grinnell case the appointees expressly elected not to take under the power. This fact does not appear to have been necessary to the result. (See Griswold, Powers of Appointment and the Federal Estate Tax, 52 Harv.L.Rev. 929, 935-936; 2 Nossaman, Trust Administration & Taxation (1965), 38.19, pp. 91-92.)
[fn. 8] 8. The federal provision read, "To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in the case of a bona fide sale for a fair consideration in money or money's worth." (Revenue Act of 1918 402(e).)
[fn. 9] 9. The words "general or limited" preceding the words "power of appointment" appearing in sections 13692 and 13693 were first added to the law in 1941. (Stats. 1941, ch. 177, p. 1222.)
[fn. 10] 10. In making this assumption we are aware that the imposition of an inheritance or estate tax does not depend upon the existence of a transfer as determined by principles of property law. (See Graves v. Schmidlapp, 315 U.S. 657, 662-663 [86 L.Ed. 1097, 1101-1102, 62 S.Ct. 870, 141 A.L.R. 948]; Estate of Newton, 35 Cal.2d 830, 838-839 [221 P.2d 952, 19 A.L.R. 2d 1399] [concurring opinion].) However, here we are not considering whether the Legislature had the power to impose an inheritance tax upon a transfer resulting from the nonexercise of a power, but whether the Legislature intended that an exercise in favor of the takers in default should be treated as an exercise or a failure to exercise the power for inheritance tax purposes.
[fn. 11] 11. Section 13696 reads, "If at the time of his death a decedent has a general power of appointment with respect to property, the exercise of the power is subject to this part of a transfer of the property from the decedent to the person to whom the property is appointed and the decedent's failure to exercise the power is subject to this part as a transfer of the property from the decedent to the person to whom the property passes by virtue of the nonexercise of the power. For purposes of this section, the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving a notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."
[fn. 12] 12. For a valuable statement of the reasons for and against the imposition of death taxes on the nonexercise of limited powers of appointment see Griswold and Leach, supra, 52 Harv. L. Rev. 929, at pp. 955-960, 964-968 (1939).