OPINION
This is an appeal from an order which denied a motion to confirm the report of the probate commissioner, overruled objections to an *Page 314 
inheritance tax report and fixed the amount of inheritance tax due the State of California. The appellant, Patricia Harrington, is the executrix of the will of Mary Porter Weaver and is also a legatee of the decedent. The appeal is taken in her capacity as executrix and also individually and on behalf of her sister and brother, who are also legatees named in the decedent's will.
The facts are without dispute: On September 28, 1934, William Donner created two inter vivos trusts, naming the Louisville Trust Company of Louisville, Kentucky, as trustee. The first of these trusts (hereafter referred to as the "Porter Trust") named the mother of decedent Mary Porter Weaver as the life beneficiary. The Porter Trust provided that upon the death of the decedent's mother, the trustee was to transfer the assets of the trust into the second trust (hereafter referred to as the "Weaver Trust") and said assets were thereafter to be administered in accordance with the terms and conditions of the Weaver Trust. The Porter Trust also provided that in the event the Weaver Trust was not in existence when the decedent's mother died, the net income from the Porter Trust would be paid to the decedent during her lifetime and, upon her death, the assets of the trust would be distributed to her issue in such manner and amounts as she might designate in her will.
The Weaver Trust, created on the same day as the Porter Trust, named the decedent as the life beneficiary. Upon her death, the assets of the Weaver Trust were to be distributed to such person or persons and in such a manner and amounts as she might designate in her will. In the event that she died without having exercised this general power of appointment, the assets of the trust were to be distributed per stirpes to her then living issue.
In 1941, William Donner died.
In 1962, the decedent's mother died. Since the Weaver Trust was still in existence, the assets of the Porter Trust were transferred into the Weaver Trust.
The decedent died on August 29, 1968, leaving a will executed on July 23, 1968. The eleventh clause of her will provided as follows: "Under an agreement dated September 28, 1934, between William H. Donner . . . and the Louisville Trust Company . . ., I have a special testamentary power of appointment. The permissible appointees under this power of appointment are limited to my issue. I exercise this power of appointment by appointing all assets subject to it to my issue in equal shares who survive me, by right of representation."
The twelfth clause of the decedent's will provided in pertinent part as follows: "I give the residue of my estate, including property over which I *Page 315 
have a power of appointment but excluding any power of appointment specifically exercised in this will, in equal shares to my issue who survive me, by right of representation; . . ."
On July 24, 1969, the report of the inheritance tax appraiser was duly filed. The appraiser determined that the Weaver Trust (including all assets previously transferred from the Porter Trust) was taxable under the state inheritance tax laws.
Patricia Harrington, the decedent's daughter and the executrix of her will, filed objections to the inheritance tax report, both in her capacity as executrix and on behalf of herself and the other legatees. She asserted that none of the assets of the Weaver Trust could properly be taxed because the decedent, in her will, had exercised only the limited power of appointment contained in the Porter Trust; that she had not exercised the general power of appointment contained in the Weaver Trust and was in fact unaware of the existence of that trust. The executrix contended that the exercise of the Porter limited power of appointment was not subject to taxation, under Revenue and Taxation Code, section 13695, because the limited power was given in connection with a transfer of property effected before June 25, 1935, and the donor of the power, William Donner, died subsequent to that date, in 1941. As for the general power of appointment contained in the Weaver Trust, the executrix contended that it had never been exercised by the decedent and that the nonexercise of said power could not be taxed because it caused no transfer and the residuary beneficiaries of the Weaver Trust (the decedent's children) took by virtue of the trust instrument and not by reason of any act of the decedent.
A hearing was held before the probate commissioner, and the executrix produced certain extrinsic evidence for the purpose of clarifying the alleged ambiguities in the eleventh and twelfth clauses of the decedent's will. Richard Weinstein, the attorney who drafted the decedent's will, testified that at the time the will was drawn, the decedent was aware of the existence of the Porter Trust, but not of the existence of the Weaver Trust, although she did know that she was the beneficiary of various other trusts not connected with either the Porter or Weaver trusts.
The probate commissioner found that at the time of making her will, the decedent was unaware of the existence of the general power of appointment in the Weaver Trust and neither exercised nor failed to exercise same; that by the eleventh clause of her will, the decedent intended to exercise the limited power of appointment in the Porter Trust; that by the twelfth clause of her will, the decedent intended to exercise such general powers of appointment as she might have in trusts other than the Weaver Trust. *Page 316 
The commissioner concluded that the eleventh and twelfth clauses of the will were ambiguous and that extrinsic evidence was admissible; that the decedent did not exercise the general power of appointment in the Weaver Trust; that her children's interest in the assets of the Weaver Trust vested contingently on September 28, 1934, when the trust was created; that the children became entitled to the assets of the Weaver Trust as takers in default by virtue of the terms of the trust; that no taxable transfer, within the meaning of Revenue and Taxation Code, section 13696, took place by reason of the decedent's failure to exercise the power of appointment in the Weaver Trust; that mere possession of a general power of appointment was not taxable in this state.
The commissioner recommended that the executrix' objections to the report of the inheritance tax appraiser be sustained.
The executrix thereafter moved for an order confirming the report of the commissioner, and the State Controller filed objections to said report.
The court found that the eleventh and twelfth clauses of the decedent's will contained no latent or patent ambiguity and that the probate commissioner should not have admitted the extrinsic evidence proffered by the executrix. The court concluded that the decedent possessed a general power of appointment in the Weaver Trust and that regardless of whether she knew of said power or did or did not exercise same, the assets of the Weaver Trust had been transferred by the decedent to her children upon her death and said assets were subject to inheritance tax under Revenue and Taxation Code, section 13696
The court ordered that the motion to confirm the report of the probate commissioner be denied, that the objections to the report of the inheritance tax appraiser be overruled, that the appraiser's report be approved, and found that the amount of inheritance tax due the state was the sum set by the appraiser in his report. The executrix filed a timely notice of appeal.
At all times subsequent to the 1965 repeal and re-enactment of Revenue and Taxation Code, section 13696, the statute has provided in pertinent part as follows: "If at the time of his death a decedent has a general power of appointment with respect to property, the exercise of the power is subject to this part as a transfer of the property from the decedent to the person to whom the property is appointed and the decedent's failure to exercise the power is subject to this part as a transfer of the property from the decedent to the person to whom the property passes by virtue of the nonexercise of the power. . . ."
When the Legislature amended section 13696 in 1965, it also amended *Page 317 
various other sections of the Inheritance Tax Law and did so in order to conform the taxation of powers of appointment under California law to the practice under the federal estate tax laws. (Estate of Cohen (1971) 4 Cal.3d 41, 49 [92 Cal.Rptr. 684,480 P.2d 300].) Section 13696 was accordingly amended to provide that both the exercise and nonexercise of a general power of appointment were taxable transfers. (Estate of Dobbins (1968)258 Cal.App.2d 262, 271 [65 Cal.Rptr. 704].)
Appellant executrix contends on appeal, as she did in the lower court, that the eleventh and twelfth clauses of the decedent's will are ambiguous, in that it cannot be determined whether she did or did not intend to exercise the general power of appointment contained in the Weaver Trust. Appellant points out that Revenue and Taxation Code, section 13696, refers to the exercise or "failure to exercise" a general power of appointment, and appellant argues that the word "failure" denotes the deliberate and knowing omission to exercise a power of appointment. Appellant reasons that if the decedent was unaware that she possessed a power of appointment over the assets of the Weaver Trust, she could not be deemed either to have exercised or "failed" to exercise said power of appointment and there would accordingly be no taxable transfer within the meaning of section 13696 Appellant contends that the decedent was in fact unaware of the existence of the power of appointment in the Weaver Trust and that this fact was established by the extrinsic evidence which appellant produced at the hearing before the probate commissioner. According to appellant, this evidence was properly received to clarify the ambiguities in the will and furnishes ample support for the commissioner's finding that there was no taxable transfer, under section 13696, because the decedent neither exercised nor failed to exercise the general power of appointment in the Weaver Trust. As an alternative argument on appeal, appellant contends that if section 13696 does purport to tax the mere unknowing possession of a general power of appointment, the statute is unconstitutional because the imposition of such a tax amounts to the taking of property without due process of law.
(1) Taking these arguments in order, it is apparent that the trial court correctly determined that the decedent's will was free from ambiguity and that it was therefore improper for the probate commissioner to admit extrinsic evidence as to the decedent's intent. In the eleventh clause of her will, the decedent purported to exercise a "special" power of appointment which limited the permissible appointees to her issue. The Porter Trust had provided that the decedent should have such a power of appointment only in the event that the Weaver Trust was not in existence at the death of the decedent's mother. Since this contingency never occurred, the decedent *Page 318 
never acquired the limited power of appointment and the assets of the Porter Trust were transferred, upon her mother's death, into the Weaver Trust to be administered subject to the terms and conditions of that trust. The eleventh clause of the decedent's will is not in the least ambiguous, although it did constitute an attempt on the decedent's part to exercise a power of appointment which she did not possess.
Pursuant to the twelfth clause of her will, the decedent bequeathed the residue of her estate, "including property over which I have a power of appointment" (but excluding the power of appointment purportedly exercised in the eleventh clause) to her surviving issue by right of representation. There is nothing in the least unclear or ambiguous about this provision of the will, and it is apparent that the decedent thereby undertook to exercise any and every power of appointment which she might possess, with the exception of the limited power of appointment specifically dealt with in the eleventh clause of the will.
In support of her contention that extrinsic evidence was properly received by the commissioner, appellant relies uponEstate of Russell (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561,444 P.2d 353], and Pacific Gas E. Co. v. G.W. Thomas Drayageetc. Co. (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], as authority for the rule that even though a writing appears unambiguous on its face, extrinsic evidence may nevertheless be admitted to show the sense in which the writer used the words and the meaning which he intended them to have.
Although the Russell and Thomas cases do stand for this proposition, they furnish no support whatever for appellant's contention that the eleventh and twelfth clauses of the decedent's will meant something other than what they clearly state. In the Russell case, the court merely held that extrinsic evidence was admissible to establish that "Roxy Russell," one of the two residual beneficiaries named in the decedent's will, was the decedent's pet dog. In the Thomas
case, the court held that extrinsic evidence should have been admitted to show that an ambiguous indemnity clause in a contract was not intended to cover injuries to the plaintiff's property, as opposed to the property of third parties. It is apparent that neither case abrogates the rule that extrinsic evidence is inadmissible to vary or contradict the terms of a written document. (Coast Bank v. Holmes (1971) 19 Cal.App.3d 581, 589 [97 Cal.Rptr. 30].)
In the instant case, the extrinsic evidence offered by appellant executrix merely tended to establish that the decedent never mentioned the Weaver power of appointment to the attorney who prepared her will and that she told him only that she wished to exercise the Porter limited power of appointment, *Page 319 
which was in fact nonexistent when her will was drawn. Although this evidence does show that the decedent may have been ignorant of the existence of the general power of appointment contained in the Weaver Trust, it certainly does not create any ambiguity whatever in the twelfth clause of the will, whereby the decedent undertook to exercise any power of appointment which she might possess other than the Porter limited power specifically dealt with in the preceding clause of her will.
In Estate of Cox (1970) 8 Cal.App.3d 168 [87 Cal.Rptr. 55], the decedents, who were husband and wife, executed handwritten wills in 1953, shortly before taking a trip. Some eight years later, in 1961, they executed a trust instrument which gave each of them a testamentary power of appointment over his or her share of the trust assets. The appellate court held that the 1953 wills, wherein the decedents had devised or bequeathed all of their real and personal property, had operated to exercise the powers of appointment in the trust subsequently created by the decedents, even though the wills made no specific reference to any power of appointment. Although evidence was produced to the effect that the wills had been executed as a mere "stopgap" measure, the court held that this evidence did not render the language of the wills in the least ambiguous. The court further held that it was of no significance that the wills were executed at a time when the decedents could not have known of any powers of appointment because none were then in existence. The court stated: "It is true that neither will was made with knowledge of the existence of any power of appointment to be exercised by will. But if the language of either will was sufficient to exercise a power of appointment created under a trust that might, for example, have provided for a disposition to the heirs of the donee, in the absence of an exercise of the power, then it must be considered to have been sufficient to exercise the power in the case at bar; . . ." (P. 191.)
(2) In the light of the foregoing, it is apparent that the twelfth clause of the decedent's will did operate to exercise the general power of appointment contained in the Weaver Trust, regardless of whether the decedent was or was not aware that she possessed that power. The language of the twelfth clause is in no sense ambiguous, and the extrinsic evidence proffered by appellant executrix did not render it so. It follows that the assets of the Weaver Trust were subject to taxation under Revenue and Taxation Code, section 13696
Although the fact that the decedent did exercise the Weaver power of appointment makes it unnecessary to discuss appellant's additional contentions on appeal, it would appear appropriate to point out that there is no merit whatever to appellant's claim that section 13696 was not intended *Page 320 
to apply in a situation where an individual possessed a general power of appointment but did not exercise it because he was unaware of its existence. (3) Section 13696 contains no language limiting its application to the knowing and intentional failure to exercise a general power of appointment, and, contrary to appellant's position, the statute specifically refers to both the "failure" to exercise the power and the "nonexercise" of the power. The Legislature obviously treated the two terms as synonymous and undertook to tax the failure or omission for anyreason to exercise a general power of appointment. (See Estateof Dobbins, supra, 258 Cal.App.2d at p. 271.)
(4) Neither is there any merit to appellant's contention that the imposition of such a tax would be violative of due process. As respondent State Controller aptly points out, the California statute is far from unique, and at least 20 other states treat as a taxable transfer subject to inheritance tax either the exercise or nonexercise of a general power of appointment. As for the constitutionality of such a provision, the Massachusetts Supreme Court held as follows in the early case of Burnham v.Treasurer and Receiver General (1912) 212 Mass. 165, 166-167 [98 N.E. 603, 604]: "If the donee had exercised the power of appointment it seems plain that although the power was a limited one the statute would have applied. [Citations.] It would have applied because the donee would have been regarded as the source of the succession. By his failure to act he equally affected the course of the succession. . . . Until the death of the donee and his exercise or failure to exercise the power of appointment it could not be known in what proportions the children or grandchildren would take. Until that event happened the estate in the children did not become complete and the succession was not fully determined. It cannot be said therefore that the estate had so vested in the children as to render the imposition of a tax under the statute above referred to unconstitutional."
In the instant case, it is clear that the decedent did exercise the general power of appointment contained in the Weaver Trust, and it is equally clear that even if she had failed to exercise said power of appointment, the assets of the trust would nevertheless have been subject to taxation under Revenue and Taxation Code, section 13696
The order appealed from is affirmed.
Taylor, P.J., and Kane, J., concurred. *Page 321