GENERAL FINANCE CORPORATION *vs.* AUGUST ARCHETTO,
*Tax Assessor.*

DECEMBER 13, 1961.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J.  This is a petition for relief from assessment brought by a taxpayer of the city of Cranston against the respondent in his capacity as tax assessor, as authorized by G. L. 1956, §44-5-26.  It was heard by a superior court justice, sitting without a jury, and resulted in a decision for the respondent.  The case is before us on the petitioner's bill of exceptions, the sole exception being to the decision.

None of the facts is in dispute.  The gravamen of the petition is that respondent by giving effect to certain tax exemption statutes, which it is argued are in violation of the state and federal constitutions, applied a higher rate per $1,000 against the full and fair cash value of petitioner's property than would otherwise have been necessary to raise

the sum of money authorized by a resolution of the city council.

It is established by the record that on April 27, 1959, the city council by resolution ordered respondent "to levy a total of not less than $6,850,000.00, and not more than $7,-151,000.00, on all rateable, tangible and intangible property located within said City, as of 31 December 1958, at such a rate per $1000. of declared or assessed tangible property, and at the rate of $4.00 per thousand on intangible personal property, so as to achieve a lawful total levy."

Accordingly respondent assessed all of the ratable property in said city at a total gross value of $281,058,920, which was reduced by $53,071,100 in exemptions authorized by the statutes of the state. Against the resulting net assessment respondent levied a tax of $6,943,528.68. The petitioner's real estate was assessed at a value of $24,780, resulting in a tax bill of $842.52. It contends that if the total tax levy had been produced by resort to the total assessment and not to the assessment which credited certain exemptions, the rate of taxation would have been so reduced as to lessen petitioner's taxes by $30.42, for which amount it seeks relief.

The trial justice noted that the exemptions in the amount proved included those made pursuant to statutes, the validity of which were not in dispute, thus reducing the amount of relief to which petitioner would be entitled if it prevailed. In the view we take, however, the discrepancy is academic. After noting the discrepancy the trial justice then considered petitioner's contentions that the exemption statutes in issue are unconstitutional, and finding them without merit entered decision for respondent.

Stated concisely for purposes of condensation the exemptions allegedly invalid are as follows:

General Laws 1956, §44-3-3. Buildings for religious purposes and the land on which they stand, not exceeding one acre, to the extent such buildings and land are

used for religious or educational purposes; $10,000 in value of the land and buildings actually used as rectories, parsonages and the like, but not exceeding one acre; intangible personalty held in trust for religious organizations, if used for religious or charitable purposes; estates of the president, officers and professors of Brown University to the amount of $10,000 in any one estate; lots of land used exclusively for burial grounds; and the real or personal estate held in trust or belonging to incorporated veteran organizations, with limitations, and provided the parent body was chartered by the congress of the United States.

Section 44-3-4. Veterans of the several wars involving the United States and the widows of such veterans, so long as they should remain unmarried.

Section 44-3-5. Parents of those men and women who lost their lives in the military service of the country, as such service is defined in the provision relating to veterans' exemptions.

The petitioner contends that all such exemptions of persons or property do not subserve a public purpose, but rather create in fact and in law inequality in the sharing of the burdens of government, which it argues is in derogation of art. I, §§2 and 16, of the Rhode Island constitution, and art. XIV, §1, of amendments to the United States constitution.

Article I, §2, of the Rhode Island constitution reads as follows:

"Laws for good of whole—Distribution of burdens of state.—All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."

Section 16 of said article provides:

"Compensation for private property.—Private property shall not be taken for public uses, without just compensation."

It is elementary that the taxing power is vested exclusively in the legislature and equally elementary that the

granting of exemptions when not outrageously subversive is as thoroughly an attribute of sovereignty as is the imposition of the tax to which the exemption relates. Likewise it is not for this court to question the wisdom of the policy pursued by the general assembly when in the exercise of its exclusive power it enacted the exemptions which are the source of petitioner's grievances.

As early as 1856, this court had occasion to construe art. I, §2, in *In the Matter of Dorrance-Street*, 4 R. I. 230, wherein this court stated at page 249:

> "We will not stop to notice the very general language and declaratory form of this clause; setting forth principles of legislation rather than rules of constitutional law—addressed rather to the general assembly by way of advice and direction, than to the courts, by way of enforcing restraint upon the law-making power. We do not mean to say that a law, purporting to impose a tax or burden of some sort upon the citizen, may not be in its distribution of the burden, both in design and effect, so outrageously subversive of all the rules of fairness, as not to come so far within the purview of this general clause, as to enable the court to save the citizen from oppression by declaring it to be void. But evidently a wide discretion with regard to the distribution of the burdens of state amongst the citizens was intended to be reposed in the general assembly by the will of the people, as signified in this clause of the constitution. The form is 'ought to be,' the word is *'fairly'* distributed, not 'equally' even—unless equality be fair, which it is not always in any sense, and never is in some senses * * *."

In a line of subsequent decisions, notably *Brown University* v. *Granger*, 19 R. I. 704, and *Opinion of the Justices in re Metropolitan Park Loan*, 34 R. I. 191, this court adhered to the rule as enunciated in *In the Matter of Dorrance-Street, supra,* without suggestion of qualification. More recently in the case of *Romano* v. *Daneker*, 77 R. I. 61, this court stated at page 65, referring to art. I, §2, "Moreover that section has been frequently held by this court to be

advisory only and not a limitation upon the legislative power of the general assembly."

Nor are the exemptions in question in derogation of art. I, §16. Again we refer to *In the Matter of Dorrance-Street, supra,* wherein at page 245 this court held, "The '*taking*,' in the clause in question, is defined to be the actual seizing or direct taking of specific property for public use, as distinguished from incidental injury to it when not taken, on the one hand, or the levying of taxes in the form of money or labor, or even of specific goods, on the other, for the public service." See *Manning* v. *Board of Tax Comm'rs,* 46 R. I. 400.

Indeed in *Brown University* v. *Granger, supra,* this court passed upon and specifically upheld the validity of the Brown University exemptions and sweepingly declared at page 710: "But that it means that the General Assembly has no power to exempt any property whatever from taxation, or that property theretofore exempted by charter was to be affected thereby, is wholly unreasonable. The whole course of State legislation, from the adoption of the constitution to the present time, conclusively negatives any such intention." Speaking thusly, the court dismissed limitations on the power to exempt allegedly implied in art. I, §2, of our constitution.

The trial justice in reaching his decision commented on the general acceptance of tax exemptions, referring to the adoption by the people of art. XXX of amendments to the Rhode Island constitution which in effect credits veterans, their widows and Gold Star parents with payment of their exemptions, for the purposes of financial town meetings. He said:

> "There was thus written into the very constitution itself an acknowledgment of the validity of the exemptions which are here the subject of attack, thus making it clear that such exemptions are not to be deemed unconstitutional under other and previously adopted sec-

tions of the fundamental law. A more solemn affirmance of legality can hardly be imagined since construction by the people in convention assembled, followed by adoption of an amendment by their vote, must clearly carry more weight with the courts than even long continued legislative construction which has been so recognized."

Likewise, tax exemptions have long been held not to violate the due process and equal protection clause of the federal constitution. *Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495. Therein it is stated at page 509, "It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation." See also *Bell's Gap R.R.* v. *Pennsylvania*, 134 U. S. 232, 237, and *Lawrence* v. *State Tax Comm'n*, 286 U. S. 276, 284.

The petitioner further contends, however, that if the granting of exemptions is not prohibited as such by the constitutional provisions heretofore discussed, nevertheless any such exemptions to religious societies, organizations or corporations or of property held by them for religious purposes are specifically prohibited by art. I, §3, of the Rhode Island constitution and art. I of amendments to the United States constitution. The pertinent provision of our state constitution reads as follows: "* * * we, therefore, declare that no man shall be compelled to frequent or to support any religious worship, place, or ministry whatever, except in fulfillment of his own voluntary contract; nor enforced, restrained, molested, or burdened in his body or goods * * *."

The petitioner argues that by relieving religious societies and organizations such as churches, schools, parsonages and the like from bearing their full share of the cost of government, its burden has been proportionately increased, thus in effect requiring it to support such religion in violation of the constitution.

In this state, exemptions to churches were common prior to as well as after the adoption of our constitution in 1842. Indeed in Pfeffer on Church, State and Freedom, at page 184, it is stated: "The universality of the exemption of church property from taxes in the United States is hardly open to doubt; constitutional or statutory provision for such exemption exists today in all states as well as in the District of Columbia. Churches, other houses of worship, and the land on which they stand are everywhere freed from tax levies, as is personal property devoted to religious uses."

Although no Rhode Island case has been called to our attention, nor have we independently discovered any where the constitutionality here in issue has been considered, we are not constrained to strike down the statutes in question in the absence of a showing that clearly and beyond a reasonable doubt they contravene art. I of the state constitution and art. I of amendments to the federal constitution. See *Romano* v. *Daneker, supra.* It is not without significance, we think, that exemptions such as those here assailed were quite common in this state when the people adopted their constitution in 1842, including the provisions of art. I, §3, as they now exist.

In art. IV, §10, it is provided, "The general assembly shall continue to exercise the powers they have heretofore exercised, unless prohibited in this Constitution." Query: Did the people intend by the adoption of art. I, §3, to prohibit to the legislature the authority to exempt religious societies, organizations and their property as had been its common practice? See 6 Acts & Resolves 74 (1769). We think not. Several states have specifically held that such exemptions are not in derogation of the religious freedom clauses of state and federal constitutions. *City & County of San Francisco* v. *McGovern,* 28 Cal. App. 491; *State* v. *Alabama Educational Foundation,* 231 Ala. 11; *Trustees of Griswold College* v. *State of Iowa,* 46 Iowa 275. See *Gibbons* v. *District of Columbia,* 116 U. S. 404.

The petitioner, however, most vigorously contends that by reason of the decisions in *Everson* v. *Board of Education,* 330 U. S. 1, 65, and *Illinois ex rel. McCollum* v. *Board of Education,* 333 U. S. 203, the supreme court of the United States has by clear implication placed these controversial statutes within the prohibition of art. I of amendments to the United States constitution. It is settled that the first amendment to the federal constitution was made applicable to the states by the adoption of art. XIV of amendments. *Murdock* v. *Pennsylvania,* 319 U. S. 105.

In the *Everson* decision the court, although sustaining the validity of a New Jersey statute which permitted reimbursement to the parents of Catholic children for the cost of bus transportation as was accorded to children attending public schools, stated at page 15: "The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another."

In conclusion the court at page 18 added, "The First Amendment has erected a wall between church and state. That wall must be kept high and impregnable. We could not approve the slightest breach. New Jersey has not breached it here." Forceful language, but oddly in contrast with the net effect of the court's decision. Notwithstanding the decision, the language of the court was generally considered to cast doubt on the legality of varying legislative acts theretofore universally accepted as within the proper sphere of the legislative power.

Thereafter in *Illinois ex rel. McCollum* v. *Board of Education,* 333 U. S. 203, it was held that a state statute authorizing the use of public schoolhouses for religious instruction under a system whereby children were released one hour each week from secular studies to attend religious instructions was in violation of art. I of amendments to the United States constitution. The court stated at page 210,

"This is beyond all question a utilization of the tax-established and tax-supported public school system to aid religious groups to spread their faith."

The petitioner argues that whatever doubt may have existed in the wake of the *Everson* decision, the subsequent decision in *McCollum* clearly holds that the court intended to strike down state statutes granting aid of whatever nature and however incidental. The statutes here under assault, it insists, squarely fall within the broad sweep of the *McCollum* decision.

We do not so construe its import. Not without significance is the concluding phraseology at page 212: "The State also affords sectarian groups an invaluable aid in that it helps to provide pupils for their religious classes through use of the State's compulsory public school machinery. This is not separation of Church and State." In granting tax exemptions to religious organizations, however, it seems to us that the incidental benefit is not such as to constitute direct participation by state authorities in the promotion of religious education, as the court indicated was the case on the facts peculiar to the *McCollum* decision.

Moreover, the sweeping implications of that case argued by petitioner appear to have been more closely confined by the decision in *Zorach* v. *Clauson,* 343 U. S. 306. There, as in the *McCollum* case, the court was concerned with the question of "released time," so called. A New York statute admittedly distinguishable on its facts was held not to violate the first amendment. Differentiating between the two cases, the court stated at page 314, "But we find no constitutional requirement which makes it necessary for government to be hostile to religion and to throw its weight against efforts to widen the effective scope of religious influence."

In all three cases strong dissenting opinions were written which, when read together with the majority opinions, leave little doubt but that definitively the court has not attempt-

ed to generalize on the intendment of the first amendment made applicable to the states by the fourteenth article of amendments.

We are persuaded that the court has not gone so far as to hold that clearly and beyond a reasonable doubt the tax exemption statutes here in issue are in contravention of art. I of amendments to the federal constitution.

The opinion of the majority in *Illinois ex rel. McCollum* v. *Board of Education, supra,* on the facts appearing therein is the law of the land. But on the question of the validity of the tax exemption statutes before us, the language of that opinion does not help the petitioner here. On the other hand Mr. Justice Reed's statement in his dissenting opinion appeals to this court as both persuasive and cogent in meeting the petitioner's contention of the unconstitutionality of these tax exemption statutes. He says at page 256, "Devotion to the great principle of religious liberty should not lead us into a rigid interpretation of the constitutional guarantee that conflicts with accepted habits of our people."

The petitioner's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Pontarelli & Berberian, Aram K. Berberian,* for petitioner.

*Charles A. Kelley,* City Solicitor, *Abraham Goldstein, Richard M. Casparian,* Assistant City Solicitors, for respondent.