Ronald R.S. PICERNE et al.

v.

Edward D. DiPRETE et al.

No. 86–143–M.P.

Supreme Court of Rhode Island.

June 24, 1988.

---

Robert N. Huseby, Licht & Semonoff, Providence, for plaintiffs.

Michael P. DeFanti, Hinckley, Allen, Tobin & Silverstein, Providence, for defendants.

## OPINION

MURRAY, Justice.

This matter is before the court on the defendants' writ of common-law certiorari to review a judgment by a justice of the Superior Court. The trial justice granted injunctive relief after finding that the defendants had selectively and illegally revalued only the plaintiffs' property.[1] We affirm.

### I

The defendants include Edward D. DiPrete, former mayor of Cranston; Carlo DelBonis, tax assessor for Cranston; and Anthony J. Ruscetta, tax collector and treasurer for Cranston. The plaintiffs own and operate apartment houses in Cranston.[2] The trial justice found that defendants had been selective and discriminatory in increasing the assessments of plaintiffs' property without revaluing property in the city as a whole. The assessments in question are those of plaintiffs' property as of December 31, 1979, for the calendar year 1980, and as of December 31, 1980, for the calendar year 1981. The assessments for the 1980 and 1981 calendar years were formulated subsequent to litigation that involved the same parties and similar issues. *Picerne v. DiPrete*, 428 A.2d 1074 (R.I. 1981) (*Picerne I*). The parties filed an agreed statement of facts.

### II

*Picerne I* resulted from litigation that began in 1979 when plaintiffs, together with approximately twenty other Cranston taxpayers, sought equitable and injunctive relief, alleging that defendants made selective and discriminatory revaluations of plaintiffs' property for the 1979 tax year. In *Picerne I* we affirmed a holding by the trial court that then Mayor DiPrete erred when he ordered tax officials to raise an additional $1,200,000 in revenue in the shortest time possible without an across-the-board tax-rate increase. In that case, at the mayor's direction, a committee was created to identify assessments necessary to raise additional revenue. Subsequently, 114 parcels of property were selected for revaluation.

In *Picerne I* the trial court found that the mayor and his committee selected properties held by 114 of approximately 28,000 taxpayers solely to balance the budget. At trial the mayor claimed that the city discovered mistakes in the apartment-valuation scheme while reviewing records relevant to discussions regarding the possibility of attaching an apartment service charge. *Pi-*

---

1. This court granted the petition for common-law certiorari after remanding for a factual hearing in the Superior Court. There it was determined that neither party had received notice of the entry of judgment until one year after it was entered.

2. The plaintiffs include Ronald R.S. Picerne, Picerne Investment Corp., Gerald H. Dahl, Alfred Carpionato, Louise Carpionato, Ann Carpionato, Pocasset Associates, Woodridge Investment Corp., and Pontiac Village Associates.

*cerne I*, 428 A.2d at 1076. The mayor testified that his primary goal was equality of valuation and that increasing revenue was only a secondary aim. However, he also testified that when he instructed city administrators to raise tax revenue, he knew of no inequities in assessed values of any apartments.[3] The trial justice noted in *Picerne I* that the last time a general revaluation was conducted in Cranston was in 1954 when all property was revalued. The trial justice added that it was clear that in 1979 the city did not attempt to revalue the whole city, nor was the revaluation part of a citywide program.

The trial justice in *Picerne I* rejected the mayor's explanation that the assessments were an attempt to rectify past assessment inequities, and he determined that defendants' purpose in selecting plaintiffs' property for reassessment was to satisfy a $1,600,000 revenue gap. *Picerne I*, 428 A.2d at 1076. The trial justice found that "defendant[s] had made a conscious effort to avoid a general revaluation and instead had targeted the smallest number of parcels that could yield the needed revenue." *Picerne I*, 428 A.2d at 1076. Consequently the trial justice determined that the 1979 revaluations were arbitrary and discriminatory and resulted in disproportionate assessments in violation of the fair-distribution clause of art. 1, sec. 2, of the Rhode Island Constitution and the equal protection clause of the Fourteenth Amendment of the United States Constitution.

We affirmed the trial justice and held that "a knowing or intentional assessment that is made discriminatorily would be unlawful." *Picerne I*, 428 A.2d at 1077; *CIC–Newport Associates v. Stein*, 121 R.I. 844, 403 A.2d 658 (1979). We held that plaintiffs "must show that defendants intentionally sifted them out for reassessment." *Picerne I*, 428 A.2d at 1077. Although we stated that attempts to correct past inequities without a general revaluation were not illegal per se or violative of

constitutional provisions, we held that when tax authorities act out of improper or discriminatory motives, the legitimacy of the revaluation process ends. *Id.* at 1078.

Accordingly we held both that an abundance of legally competent evidence supported the factual findings and that the trial justice had ruled correctly that defendants had assessed plaintiffs' property in an illegal manner for the 1979 tax year.

### III

We turn to the case before us involving defendants' writ of certiorari with regard to the 1980, 1981, and 1982 tax years.[4]

In 1980, while defendants' appeal in *Picerne I* was pending, defendants in this action revalued and reassessed the same real estate of plaintiffs in the prior litigation. Carlo DelBonis became the tax assessor in April 1980 and certified the tax roll for the 1980 tax year. Armand DiVincenzo, who had been assessor during the prior period, left his position in September 1979, and Anthony J. Rusetta served as acting assessor until DelBonis was appointed in 1980. During that interim, DelBonis had the responsibility for assessing commercial and industrial properties and large apartment houses. DelBonis utilized another assessment method and revalued plaintiffs' properties. After the reassessments, several property owners entered into a settlement agreement with defendants. The plaintiffs in the instant case chose to contest the new assessments determined by DelBonis. The plaintiffs collectively own sixteen pieces of property that are at issue on appeal.

When trial commenced in 1982, DelBonis testified that he reassessed the properties owned by plaintiffs because he was aware from *Picerne I* that the prior assessments of the properties were inequitable. He stated that the reassessments "were resultant in that I felt that the reassessments

---

3. On March 9, 1979, Mayor DiPrete sent the city director of administration, Thomas Powers, a memo instructing him to form a committee to raise additional tax revenue through updated assessments.

4. The trial justice noted that by stipulation of the parties the decision was made applicable to the 1982 tax year in addition to the 1980 and 1981 assessments.

were incorrect and should be corrected." With regard to the method he utilized, DelBonis testified that he discovered a "commercial schedule" that was prepared in 1954 by the Cole-Layer-Trumble Company, the firm that supervised the last citywide revaluation in that same year. DelBonis used the commercial schedule to reassess the apartment houses owned by plaintiffs for the 1980 tax year. However, DiVincenzo, who had served as tax assessor and deputy tax assessor over a seventeen-year period, testified that he had always used an "apartment building schedule" to assess apartment buildings. Therefore, it became clear from the evidence that the commercial schedule used by DelBonis was applied only to plaintiffs' apartment buildings and not to any other apartment houses in Cranston.

DelBonis testified that more than 700 pieces of property had been reassessed in 1980. However, when confronted with the agreed statement of facts, he acknowledged that most of the reassessments involved only status changes in property, changes resulting from improvements or the demolition of existing buildings. In addition he stated that he derived dollar figures per square foot for the assigned grades from the commercial schedule, but he was unable to point to any part of the schedule reflecting those figures. DelBonis claimed that he used his judgment and expertise to determine that the difference between an "A" grade and an "A−" would be $1.60 whereas the difference between an "A" and a "B+" would be one cent.

The trial justice found, in light of the testimony, exhibits, and stipulation of facts, that the Cole-Layer-Trumble commercial schedule was not used appropriately by DelBonis because it was not designed to be used to assess apartment buildings that have no commercial use. In addition the trial justice found that the schedule contained no provision for intermediate grades such as A− or B+ and DelBonis conceded that he arbitrarily assigned values to such grades. The trial justice concluded,

"In short, no effort was made to revalue residential, commercial or industrial property for the 1980, 1981, or 1982 tax years, other than the 16 parcels belonging to the plaintiffs, all of whom were parties to the prior litigation. The plaintiffs, this Court finds, constituted a deliberately selected group amounting to a miniscule percentage (.00055) of the ratable property in the City of Cranston, ie. 16 of the approximately 29,000 parcels of real estate in the city without proper or lawful motivation."

The trial justice assessed the testimony of DelBonis, who claimed that his intention was to correct mistakes and past inequities in the tax rolls. The trial justice noted the character and content of DelBonis' answers, and his demeanor while describing his intentions, and concluded that his testimony was unpersuasive. Further, the trial justice found that it was an "inescapable factual conclusion" that the assessments were not part of a citywide effort to correct inequities, or even to correct errors in the assessment of these parcels, but were set solely because these parcels had been involved in prior litigation: "[T]he defendants in this case had the same narrow aim as their 1979 actions: deriving revenue from the smallest number of parcels to produce needed revenues." Thus the trial justice concluded that the reassessments were "consciously selective, arbitrary, patently discriminatory, [and] improperly motivated, resulting in disproportionate taxation to the plaintiffs."

The defendants contend that (1) the absence of a general revaluation will not render the correction of an erroneous assessment illegal per se and (2) the trial justice misconstrued the evidence in concluding that the assessment method proved discriminatory intent or impact.

◼ The scope of review on a writ of certiorari is normally limited to a review of the record, and such review must extend only to questions of law that appear on the petition. *Almstead v. Department of Employment Security Board of Review*, 478 A.2d 980, 982 (R.I.1984). We depart from our general practice only when, as here, we find the existence of a matter of substan-

tial public interest. *Lynch v. King*, 120 R.I. 868, 391 A.2d 117 (1978); *A.T. & G., Inc. v. Zoning Board of Review of North Smithfield*, 113 R.I. 458, 322 A.2d 294 (1974).

According to the findings of fact following proceedings ordered by this court (*see* footnote 1, *supra*), a Superior Court justice determined that neither party had received actual notice that judgment had been entered approximately one year earlier. Thus, through no fault of defendants, the time limitation to appeal the trial justice's decision provided by Rule 4 of the Supreme Court Rules had expired. It is apparent that defendants were prejudiced thereby. Therefore, we deem it appropriate to apply the more liberal standard of review that would have been applied had defendants filed a timely appeal.

Therefore, in our review we are mindful that a trial justice's findings are to be given great weight on appeal, and when the trial justice's findings are supported by legally competent evidence, such findings will not be disturbed unless the justice is shown to be clearly wrong or unless he or she has overlooked or misconceived material evidence. *Picerne I*, 428 A.2d at 1078; *CIC–Newport Associates*, 121 R.I. at 852, 403 A.2d at 662. After a review of the record we hold that the trial justice's findings are amply supported by legally competent evidence and the findings will not be disturbed. Also, we disagree with defendants' assertion that the trial justice overlooked or misconceived material evidence.

We believe that our holding in *Picerne I* is applicable to the case before us and is dispositive of the issues presented. We held that in instances in which "taxing authorities act out of improper or discriminatory motives, the legitimacy of the revaluation process ends." *Picerne I*, 428 A.2d at 1078. Revaluations must be carried out in an acceptable and orderly manner, and se-

lective assessments are generally held to be unlawful as discriminatory. *Id.* at 1077.

■ At trial DelBonis admitted that he selected plaintiffs' property for reassessment because he was aware from *Picerne I* that "inequities" existed with regard to those particular parcels. The trial justice found that no general effort was made to reassess any other property in Cranston. We believe that the trial justice correctly concluded that the reassessments were selective and therefore unlawful.

The defendants contend, and DelBonis testified, that his actions were justified because he was attempting to correct past inequities or mistakes. In *Picerne I* we affirmed the trial justice's rejection of the same argument. In the matter now before the court the trial justice again rejected this argument. More particularly, the trial justice found DelBonis's testimony to be unpersuasive. We find no evidence to demonstrate that the trial justice was clearly wrong. As a result the findings will not be disturbed.

The defendants further contend that the trial justice misconceived or overlooked material evidence in finding that DelBonis had inappropriately used the commercial schedule. We need not discuss the method utilized by DelBonis because the assessment of only the plaintiffs' property was selective and discriminatory and therefore illegal.

Accordingly the petition for certiorari is denied, the writ heretofore issued is quashed, and the case is remanded to the Superior Court with the court's opinion endorsed thereon.