DECISION
This matter is before the Court in a suit brought by various apartment house owners against the tax assessor of the City of Woonsocket seeking injunctive relief in order to enjoin the implementation of specific modifications to Woonsocket's Homestead Exemption Ordinance. Jurisdiction is pursuant to G.L. § 8-2-13.
 Facts/Travel
Plaintiff, Ferland Corporation ("Ferland"), is a corporation existing under the laws of Rhode Island. Ferland owns various residential apartment complexes in the City of Woonsocket, Rhode Island: Four Seasons North Apartments located at 2491 Diamond Hill Road, Rhode Island Apartments located at 127 Mendon Road, and Diamond Hill Road Apartments also located at 127 Mendon Road. Ferland is a general partner of Plaza Village Group, a Rhode Island limited partnership, and is also an owner of the Plaza Village Apartments, located at 104 Village Road, Woonsocket, Rhode Island. Plaintiff, Armand A. Ferland, is a general partner of the Walnut Hill Group, also a Rhode Island limited partnership, and is an owner of the Walnut Hill Apartments, with a main office located at 2305 Diamond Hill Road, Woonsocket, Rhode Island. Ferland is a limited partner in the Walnut Hill Group. All of the aforementioned properties have in excess of ten residential units with the exception of the Walnut Hill Apartments. The Walnut Hill Apartments are situated on eleven parcels of land, some of which contain fewer than ten apartments and others which contain ten or more apartments. Defendant, Arthur Bouchard, is the Tax Assessor of the City of Woonsocket.
Prior to the fiscal year commencing on July 1, 1997, all of plaintiffs' residential real estate, located in Woonsocket, was entitled to a homestead exception pursuant to Chapter 482 of the 1988 Rhode Island Public Laws and Section 2-14 of Woonsocket's Code of Ordinances ("Section 2-14"). In 1994, Chapter 482 was amended by Chapter 241 of the Rhode Island Public Laws. This amended Chapter 241 was approved by the qualified electors of Woonsocket on November 8, 1994. Pursuant to Chapter 241, the legislature gave the City of Woonsocket the discretion to define residential real property in the context of granting homestead exemptions. Chapter 241 stated that "`residential real property' shall be defined from time to time by ordinance of the city council." Subsequently, on or about April 16, 1997, Section 2-14 was amended. The 1997 version of Section 2-14, which implemented Chapter 241 of the 1994 Rhode Island Public Laws, granted a homestead exemption for "residential real property that does not exceed (10) apartments." This exception took effect with the commencement of the July 1, 1997 fiscal year.
After the 1997 Amendment to Section 2-14, plaintiffs commenced an action in the Providence Superior Court (P.C. No. 97-3404) challenging the City of Woonsocket's failure to apply the homestead exception to certain properties of the plaintiffs. On or about May 19, 1998, this Court rendered a written decision finding "Chapter 241 of the 1994 Rhode Island Public Laws . . . an unconstitutional delegation of legislative power to the City of Woonsocket." This Court granted plaintiffs' request for injunctive relief precluding the City from enforcing Section 2-14. Judgment was entered in the 1997 case on June 8, 1998.[1]
On or about May 27, 1998, the Woonsocket City Council passed a Resolution petitioning the Rhode Island General Assembly to enact legislation "relating to the exemption and assessment of real and ratable tangible personal property in the City of Woonsocket." On July 9, 1998, Chapter 250 of the Rhode Island Public Laws ("1998 Act") was stamped effective by the Secretary of State. In pertinent part, the 1998 Act provided:
 "Sec. 1. Homestead exemption for the city of Woonsocket. Notwithstanding any other provisions of the general or special laws to the contrary, the city of Woonsocket is hereby authorized to fix a homestead exemption with respect to assessed value from local taxation on taxable real property used for residential purposes in the city of Woonsocket and to grant homestead exemptions to the owners of such real property in an amount of twenty-five percent (25%) of the assessed value. Any such homestead exemption shall only apply to real property used for residential purposes and improved with a dwelling or dwellings containing less than ten (10) dwelling units. Residential real estate is defined as real property used or held for human habitation containing one or more dwelling units, including rooming houses, and mobile homes with facilities designed and used for living, sleeping, cooking and eating on a non-transient basis. The property includes accessory land, buildings or improvements incidental to such habitation and used exclusively by the residents of the property and their guests. The property does not include a hotel or motel. In order to determine compliance with the homestead exemption outlined above, the city council shall provide by resolution or ordinance rules and regulations governing eligibility for the exemption established by this section."
On or about July 7, 1998, Ordinance 6518 ("1998 Ordinance") was signed and approved by the Mayor of Woonsocket. This Ordinance was to once again amend Section 2-14. Pursuant to the 1998 Act and Ordinance, only those residential apartments, in the City of Woonsocket, with fewer than 10 units were entitled to a twenty-five (25%) homestead exemption. No homestead exemption was provided for residential apartments with ten or more units.
On or about November 25, 1998, this Court heard oral argument from the respective parties.[2] The parties have submitted post-hearing memoranda discussing issues addressed at the hearing. This case is now ready for decision on plaintiffs' request for injunctive relief Plaintiffs argue that the 1998 Ordinance, amending Section 2-14, is invalid because it was passed prior to the effective date of the statute authorizing its adoption. Further, in their complaint, plaintiffs argue constitutional violations. Plaintiffs contend that the homestead exception, which was authorized by the 1998 Act, constitutes an unreasonable and irrational classification among residential properties which is violative of the equal protection clauses contained in Article I, Section 2 of the Rhode Island Constitution and the Fourteenth Amendment to the United States Constitution. Further, plaintiffs contend that the 1998 Act denies the right of all taxpayers to have taxation burdens fairly distributed. Finally, plaintiffs argue that the 1998 Ordinance is void having resulted in a discriminatory and selective application of the homestead exception forbidden by the Rhode Island Supreme Court in Picerne v. DiPrete, 542 A.2d 1101 (R.I. 1988) ("Picerne II") and Picerne v. DiPrete, 428 A.2d 1074 (R.I. 1981) ("Picerne I").
 I. Standard For Granting Injunctive Relief
The decision to grant or deny injunctive relief falls within the sound discretion of the trial justice. Brown v. Amaral,460 A.2d 7, 10 (R.I. 1983). An injunction is an extraordinary remedy requiring a party to either do or refrain from doing a particular act. Id. The standard for granting injunctive relief is well settled. "The main prerequisite to obtaining injunctive relief is a finding that the plaintiff is being threatened by some irreparable injury for which he has no adequate legal remedy.Id.; (citing Rhode Island Turnpike Bridge Authority v. Cohen,433 A.2d 179, 182 (R.I. 1981)). To satisfy the irreparable injury element, the moving party must demonstrate that the irreparable harm is "presently threatened" or "imminent." Cohen, 433 A.2d at 182. Injuries which are prospective only and might never occur cannot serve as the basis for a permanent injunction. Id.; (citing Ashland Oil, Inc. v. F.T.C., 409 F. Supp. 297, 309 (D.D.C. 1976), aff'd, 548 F.2d 977 (D.C.Cir. 1977)). Furthermore, a moving party must also show that it has a reasonable likelihood of succeeding on the merits of its claim. In re State Employees'Unions, 587 A.2d 919, 925 (R.I. 1991). Finally, the trial justice performs a type of equitable balancing test. The judge is required to weigh the relief sought against the harm which would be visited upon the other party if an injunction were to be granted. Id. Upon performing the balancing equation, the court is obligated to consider, as an essential factor, the public interest involved. Id.
 II. Enactment of Ordinance
Plaintiffs argue that the 1998 Ordinance, amending Section 2-14, is invalid because it was passed prior to the effective date of the legislation which authorized its adoption. Defendant disagrees with plaintiffs' position contending that the 1998 Ordinance is effective and in accordance with the 1998 Act and general legal principles. Specifically, defendants argue that pursuant to G.L. § 43-3-25, the 1998 Act became effective on July 1, 1998. Further, defendants cite Langevin v. Begin,683 A.2d 357 (R.I. 1996) in support of their position that "all steps under a City Charter must be completed before an ordinance or resolution is `adopted' or becomes `effective.'"
The Woonsocket Home Rule Charter, Chapter III, Section 9 provides:
 "The effective date of any ordinance, except that relating to the appropriation of moneys or the levying of taxes, shall be the eleventh consecutive day following its passage or approval by the council unless a subsequent date be prescribed therein. A resolution shall take effect immediately upon its adoption."[3]
An ordinance speaks only from the time it becomes effective.Detroit v. General Foods Co., 197 N.W.2d 315, 320 (Mich. Ct. App. 1972) ("Statutes [and ordinances] passed to take effect at a future date are to be understood as speaking from the time they go into operation and not from the time of passage."); State exrel. Thorn v. Devin, 173 P.2d 994, 998 (Wash. 1946). "Where a definite time is prescribed before an ordinance shall take effect or go into force, the ordinance is effective from the expiration of the time prescribed, which may be called the `effective date' or the `date of operation,' and not from the date of its passage." 5 McQuillin Mun Corp § 15.39 (3rd Ed).
An ordinance not validly enacted in compliance with the law is not enforceable. Claiborne Country Club v. City of Tazewell,782 S.W.2d 476 (Tenn. 1990). Particularly noteworthy is the Rhode Island Supreme Court's decision in Langevin. In Langevin the Providence City Council voted in favor of a resolution to have a question regarding a proposed gambling facility and/or activity placed on the ballot. Id. at 357. The Mayor of Providence vetoed the proposal and the city clerk refused to submit the resolution to the Secretary of State for placement on the ballot. Id. At some point, an unauthenticated version of the resolution was sent to the Secretary of State who refused to place it on the ballot.Id. at 358. The issue before the court was whether the resolution was adopted, within the meaning of G.L. § 41-9-4, when all the requirements contained in the Providence Home Rule Charter had not been satisfied. Id. Section 41-9-4 of the Rhode Island General Laws[4] permits a town or city council, by "`adopting a resolution,'" to place the question of establishing a gambling facility in the city or town before local and state voters. Id.
In its decision, the court noted the procedure outlined in the Providence Home Rule Charter:
 "Under the charter any resolution or ordinance passed by the council is to be transmitted by the city clerk to the mayor for his approval or veto. Section 412. Upon final passage (signature by the mayor, override of his veto, or the passage of time without veto) the ordinance or resolution is finally authenticated by the signature of the president and the city clerk and is recorded by the city clerk. Section 414. Only upon completion of this final step has a resolution been formally `adopted' under the procedures required by the city charter." Id.; (emphasis added).
The court concluded that the resolution was not properly adopted, adding that "in the City of Providence, the phrase `adopting a resolution' was intended to include all the provisions under the Providence Home Rule Charter that would be required in order to achieve final passage of such resolution." Id.
With respect to the controversy at bar, a more detailed review of the facts is warranted. On May 27, 1998, the Woonsocket City Council passed a Resolution petitioning the Rhode Island General Assembly to enact legislation "relating to the exemption and assessment of real and ratable tangible personal property in the City of Woonsocket." The 1998 Act, authorizing the amendment to Section 2-14, passed the Rhode Island Senate on or about June 18, 1998; the Act passed the State House of Representatives on or about June 30, 1998. See Agreed Statement of Facts, Exhibit H. On or about July 1, 1998, the 1998 Act was transmitted to the governor. No action was taken by the governor and on July 9, 1998, the 1998 Act was stamped "effective" by the Secretary of State. The 1998 Ordinance, amending Section 2-14, was read and passed for the first time before the City Council on June 15, 1998 and for the second time on July 6, 1998. See Agreed Statement of Facts, Exhibit I. The ordinance was signed and approved by the mayor on July 7, 1998.[5] Id.
After a review of the facts and law, this Court finds that the 1998 Ordinance, amending Section 2-14, is effective and is in accordance with generally accepted legal principles. Although the Ordinance was signed by the mayor on July 7, 1998, in accordance with the Woonsocket Home Rule Charter it could not have becomeeffective until at least July 17, 1998, a time after which Woonsocket had clearly received legislative authority to pass the Ordinance. Under the rationale espoused in Langevin, the Ordinance had no effect until it was in complete compliance with the timing provisions of the Woonsocket Home Rule Charter, which required an eleven day waiting period. This Court need not address the issue concerning the effective date of the 1998 Act. Plaintiffs do not disagree that the Act became effective on July 9, 1998. See Plaintiffs' Post-Hearing Reply Memorandum dated February 8, 1999 at 2.
 III. Constitutional Violations
In their complaint, plaintiffs argue that the homestead exception, which was authorized by the 1998 Act, constitutes an unreasonable and irrational classification among residential properties which is violative of the equal protection clauses contained in Article I, Section 2 of the Rhode Island Constitution and the Fourteenth Amendment of the United States Constitution. Further, plaintiffs contend that the 1998 Act denies the right of all taxpayers to have taxation burdens fairly distributed pursuant to Article I, Section 2 of the Rhode Island Constitution. Further, plaintiffs argue that the 1998 Ordinance is void having resulted in a discriminatory and selective application of the homestead exception forbidden by the Rhode Island Supreme Court in Picerne I and Picerne II. Defendant disagrees with plaintiffs' position arguing that the homestead exemption does not create an arbitrary or irrational classification.[6] Defendant further contends that the Picerne
cases are distinguishable from the case at bar.
 A. Acts of the General Assembly
At the onset, this Court reviews the law with respect to legislative enactments. The Rhode Island Supreme Court has stated that "all laws regularly enacted by the legislature are presumed to be constitutional and valid." City of Pawtucket v. Sundlun,662 A.2d 40, 45 (R.I. 1995). The Court will undoubtedly "`make every reasonable intendment in favor of the constitutionality of a legislative act, and so far as any presumption exists it is in favor of so holding.'" Id.; (quoting State v. Garnetto,75 R.I. 86, 94, 63 A.2d 777, 781 (1949)). The party attempting to invalidate a legislative act has a heavy burden. The Court will not annul a legislative enactment unless the challenging party can prove "beyond a reasonable doubt" that the statute in controversy is repugnant to a constitutional provision. Id.; (citing Gorham v. Robinson, 57 R.I. 1, 7, 186 A. 832, 837 (1936).
 B. Power to Tax-Overview
It is well settled that the state's power to tax is plenary.In re Opinion to the Governor, 93 R.I. 28, 30, 170 A.2d 908, 909 (R.I. 1961); See also Capitol Bldg. Co. v. Langton, 101 R.I. 131, 135, 221 A.2d 99, 102 (R.I. 1966). "The validity of tax legislation derives `from the inherent power of the State to impose taxes.'" Opinion to the Governor, 170 A.2d at 909 (quotingManning v. Board of Tax Com'rs, 46 R.I. 400, 413, 127 A. 865, 871 (R.I. 1925). The state's power to tax is not parleyed; it rests in the sovereignty. Id. The imposition or levy of a tax is an exercise of the state's legislative power. Id. In the absence of an express constitutional circumscription, the power to tax may be exercised by the legislature in its entirety. Id. The General Assembly has complete control over taxation and may decide what will be taxed, the amount, and what will be exempt. Id. With respect to granting exemptions, the Rhode Island Supreme Court has said:
 "The granting of exemptions when not outrageously subversive is as thoroughly an attribute of sovereignty as is the imposition of the tax to which the exemption relates. Likewise it is not for this court to question the wisdom of the policy pursued by the general assembly when in the exercise of its exclusive power it enacted the exemptions [in controversy]." General Finance Corp. v. Archetto, 93 R.I. 392, 396, 176 A.2d 73, 77 (R.I. 1961).
"It has been held that a homestead exemption is not a vested right that cannot be impaired by legislation after it has been acquired, but is a mere statutory privilege, depending upon the will of the state." 40 Am.Jur.2d Homestead § 8 (1999).
 1. Equal Protection and Taxation
Article 1, Section 2 of the Rhode Island Constitution provides: "nor shall any person be denied equal protection of the laws."[7] Tax exemptions have long been held as not violative of the due process and equal protection clauses of the federal constitution. Archetto, 176 A.2d at 76 (citation omitted). InArchetto, the court, quoting Carmichael v. Southern Coal CokeCo., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937), provided:
 "`It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation.'" Id. at 76.
Our state Supreme Court has recognized the legislature's broad powers to select and classify property and persons for taxation purposes. Gott v. Norberg, 417 A.2d 1352, 1358 (R.I. 1980) (citing Allen v. Bonded Municipal Corp., 62 R.I. 101,4 A.2d 249 (1938); Manning v. Board of Tax Commissioners, supra;Burrillville Racing Association v. State, 118 R.I. 154, 159-60,372 A.2d 979, 983 (1977)). The power of classification, for tax purposes, is incidental to the state's power to tax. Opinion tothe Governor, 170 A.2d at 909 (citation omitted). "Any classification of taxation is permissible which has a reasonable relation to a legitimate end of governmental action." Id. at 910-11. As stated in Manufacturers' Mut. Ins. Co. v. Clarke,41 R.I. 277, 103 A. 931 (R.I. 1918):
 "It is within the power of the Legislature to classify persons and property for the purpose of taxation, and to impose different burdens upon different classes, provided such classification is not unreasonable nor arbitrary, but is based upon differences indicating `a reasonable and just relation to the act in respect to which the classification is proposed.' The authority of the Legislature in the exercise of its police power and its power of taxation to make classification of persons and property has frequently been considered in cases involving alleged violations of the Fourteenth Amendment to the Constitution of the United States. The growing tendency is apparent on the part of the state and federal courts to hold that where a difference appears it need not be great nor conspicuous to warrant classification by the Legislature."
Id. at 933 (holding that the imposition of a tax on the intangible personalty of a mutual insurance or surety company, while exempting stock insurance companies, who pay a tax on premiums, was not violative of the Rhode Island Constitution, Article 1, Section 2, and the United States Constitution, Amendment 14). In any equal protection analysis not involving a fundamental right or suspect classification, the proper standard of review is minimal scrutiny. Sundlun, 662 A.2d at 60. Minimal scrutiny necessitates a showing that the legislative classification is "rationally related to a legitimate state interest." Id. (citation omitted); see also, Burrillville RacingAssociation, 372 A.2d at 981.
After a review of the pertinent law, this Court finds that the 1998 Act does not create an irrational or unreasonable classification in violation of the equal protection clauses of the United States and Rhode Island Constitutions. "Classifications based on numbers have often been sustained." Associated Industriesv. State Tax Com'n, 722 S.W.2d 916, 918 (Mo. Banc. 1987) (statute classifying as residential, all real property having been improved by a structure and containing not more than four units for purpose of assessment at lower rate is not violative of the Equal Protection Clause of United States Constitution and Uniformity Clause of Missouri Constitution). In Hegenes v. State, 328 N.W.2d 719 (Mimi. 1983), involving a classification of non-homestead properties into those of three units or less and those with four or more units, the court found said classification did not violate the state Uniformity Clause or Federal Equal Protection Clause. After observing the differences between properties of three units or less to large residential properties, the Hegenes Court noted that said classifications could be "sustained on a number of logical bases." Id. at 721. Hypothetically, such bases may include the need for "more expensive fire and police protection."Id. Further, "smaller units may have propotionately more tax attributed to land value as compared to building value." Id. In the case at bar, there is a distinction between all properties containing fewer than ten dwellings and those containing ten or more dwellings. As pointed out by Justice Holmes:
 "`When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark.'" Id. at 722 (quoting Louisville Gas Electric Co. v. Coleman, 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770 (1928) (Holmes, J., dissenting).
After reviewing the 1998 Act, this Court finds that plaintiffs have not met their burdens demonstrating that the classification lacked any rational basis.
 2. Fair Distribution and Taxation
In pertinent part, Article 1, Section 2 of our state's constitution provides as follows:
 "All free governments are instituted for the protection, safety and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens."
While it is generally recognized that taxes should be distributed fairly among state citizens, it is also recognized that absolute fairness and equality cannot be attained. Manufacturers' Mut.Ins. Co. 103 A. at 933 (R.I. 1918). In the Matter ofDorrance-Street, 4 R.I. 230, 249 (R.I. 1856), the Rhode Island Supreme Court said:
 "We will not stop to notice the very general language and declaratory form of this clause; setting forth principles of legislation rather than rules of constitutional law — addressed rather to the general assembly by way of advice and direction, than to the courts, by way of enforcing restraint upon the lawmaking power. We do not mean to say that a law, purporting to impose a tax or burden of some sort upon the citizen, may not be in its distribution of the burden, both in design and effect, so outrageously subversive of all the rules of fairness, as not to come so far within the purview of this general clause, as to enable the court to save the citizen from oppression by declaring it to be void. But evidently a wide discretion with regard to the distribution of the burdens of state amongst the citizens was intended to be reposed in the general assembly by the will of the people, as signified in this clause of the constitution. The form is `ought to be,' the word is `fairly' distributed, not `equally' even — unless equality be fair, which it is not always in any sense, and never is in some senses * * *."
Unless a proposed distribution is so outrageously subversive of all rules of fairness so as to equate to oppression, Article 1, Section 2 is by way of advice and direction to the law making power, rather than to the courts by way of restraining such power. Kalian v. Langton, 91 R.I. 367, 372, 192 A.2d 12, 15 (R.I. 1963); see also, Archetto, 176 A.2d at 76 (stating that Article 1, Section 2 has been described as "advisory only and not a limitation upon the legislative power of the general assembly," and holding that statutes which grant tax exemptions for religious purposes were not invalid for not subserving a public purpose and for creating an inequality in sharing of burdens of government).
After a review of the pertinent law this Court finds that the 1998 Act is not violative of the fair distribution provision of the Rhode Island Constitution. Plaintiffs have not demonstrated to this Court that the homestead exemption is so outrageously subversive as to offend notions of fairness. Although the homestead exemption may not be completely "equal," this Court believes that the 1998 Act is fair and does not amount to oppression on the part of the general assembly. This Court will not, in this case, use the our state's fair distribution provision in order to restrain the Act of the legislature.
 C. Picerne I and II
Plaintiffs cite Picerne I and Picerne II arguing that the 1998 Ordinance is void having resulted in a discriminatory and selective application of the homestead exception. Defendant disagrees with plaintiffs' position arguing that the situation at bar is distinguishable from that in Picerne I and Picerne II. A review of the facts of these cases is warranted. Both cases,Picerne I and Picerne II involve administrative selective revaluation.
In Picerne I, the Mayor of Cranston instructed the city Director of Administration to chair a committee in order to raise an additional $1,200,000 in tax revenue. Id. at 1075. The committee ultimately performed this task by revaluating 114 properties out of more than 28,000 parcels of real estate. Id. at 1076. Plaintiffs, a group of taxpayers, commenced an action, seeking equitable and injunctive relief, contending that the defendants had made selective and discriminatory revaluations of their property for the 1979 tax year.
The trial court found that the Mayor, along with his committee had selected the properties, which were held by 114 of approximately 28,000 taxpayers, solely as a means of balancing the budget. Rejecting the Mayor's explanation that the assessments were an attempt to remedy past assessment inequities, the trial judge concluded that the purpose behind selecting the plaintiffs' property for reassessment was merely to satisfy a $ 1,600,000 revenue gap. Id. at 1076. The trial judge found that the "defendant[s] had made a conscious effort to avoid a general revaluation and instead had targeted the smallest number of parcels that could yield the needed revenue." Id. Accordingly, the trial judge concluded that the 1979 revaluations were arbitrary and discriminatory resulting in disapropriate assessments in violation of the Fair Distribution Clause, found in Article 1, Section 2 of the Rhode Island Constitution, and the Equal Protection Clause found in the Fourteenth Amendment to the United States Constitution. Id.
On appeal, the Rhode Island Supreme Court noted that "a knowing or intentional assessment that is made discriminatorily would be unlawful." Id. at 1077. The court added that before it could grant the relief requested, it was necessary for plaintiffs to demonstrate that they had been "intentionally sifted . . . out for reassessment." Id. Although the court acknowledged that "correcting past inequities without a general revaluation is not illegal per se or violative of constitutional uniformity or equal protection provisions," the court held that "when the tax authorities act out of improper or discriminatory motives, the legitimacy of the revaluation process ends." Id. at 1078. In finding evidence to support the trial court's factual findings, the court affirmed the trial judges decision holding that the plaintiffs' property was illegally assessed for the 1979 tax year. Id.
In 1980, while the Picerne I appeal was pending, the defendants in Picerne II again revaluated and reassessed the very same real estate of the plaintiffs as in the previous controversy. Picerne II, 542 A.2d at 1103. This time, the assessor used an improper commercial schedule and arbitrarily assigned grade values. Id. at 1104. The result was a revaluation of only 16 parcels owned by the plaintiffs (out of 29,000 parcels). Id. at 1104. The trial judge found that once again, the defendants, in assessing the plaintiffs' properties "`had the same narrow aim as [in] their 1979 actions.'" Id. at 1104. That was, "`deriving revenue from the smallest number of parcels to produce needed revenues.'" Id. The trial judge concluded that the reassessments were "`consciously selective, arbitrary, patently discriminatory [and] improperly motivated, resulting in disproportionate taxation to the plaintiffs.'" Id.
On appeal, the Supreme Court once again applied the holding in Picerne I. Id. at 1105. That being, "in instances in which `taxing authorities' act out of improper or discriminatory motives, the legitimacy of the revaluation process ends.'" Id.
(quoting Picerne I, 428 A.2d at 1078). The court again agreed with the trial judge's conclusion that the reassessments were selective and unlawful. Id.
After a review of both Picerne cases, this Court finds that plaintiffs' reliance on Picerne I and Picerne II is misplaced. The Picerne cases, involving administrative selective revaluation, are clearly distinguishable from the legislatively granted tax exemption case currently before the Court. There is no evidence that any properties in Woonsocket, let alone plaintiffs', were revaluated for the 1998 tax year, bringing this case into the ambit of Picerne I II. Additionally, although plaintiffs have referred to statements made by the City's Finance Director and the Mayor, in an attempt to demonstrate that the City Council of Woonsocket had targeted a small number of properties to raise necessary revenue as in Picerne, this Court believes that those statements are irrelevant. This case involves the constitutionality of an act of the Legislature. The Legislature, not the City, set the demarcation line for the homestead exception at less than ten units. Whatever motives, if any, legislators may have had in enacting the 1998 Act are irrelevant. See Holmes v. Farmer, 475 A.2d 976, 989 (R.I. 1984) (Kelleher, J., concurring); see also, In re Advisory Opinion tothe House of Representatives, 485 A.2d 550, 552 (R.I. 1984).
 Conclusion
In conclusion, plaintiffs are not entitled to injunction relief. In finding that the 1998 Ordinance is effective and that the 1998 Act is not violative of the rights in Article 1, Section 2 of the Rhode Island Constitution, mainly the right of all taxpayers to have taxation burdens fairly distributed and the guarantee of equal protection, this Court concludes that plaintiffs have not sufficiently demonstrated a reasonable likelihood of succeeding on the merits of their claim at trial. Defendant's additional arguments need not be addressed.
Counsel shall submit an appropriate order and judgment for entry consistent with the provisions thereof.
[1] The June 8, 1998 judgment provided as follows:
 "1. Chapter 24 of the 1994 Rhode Island Public Laws is an unconstitutional delegation of legislative power to the City of Woonsocket;
 2. if said Chapter 241 were to be held constitutional, the City Council in Ordinance 2-14 as amended on April 6, 1997 goes beyond the authority granted by the General Assembly in that the legislative action of the Council represents an impermissible classification within, rather than, a definition of "residential real property." Therefore, plaintiffs are entitled to the injunctive relief sought including precluding the City of Woonsocket from enforcing Ordinance 2-14.
 3. Plaintiffs shall be entitled to the same homestead exemption as that accorded in Ordinance 2-14 to all other owners of residential dwelling units."
[2] At the November 1998 hearing, plaintiffs withdrew their argument that the 1998 Act violates the Home Rule Charter Provisions of the Rhode Island Constitution. See Amended Complaint Count I.
[3] The 1998 Ordinance acknowledges the effective date provision of the Woonsocket Charter. Section 2 of that Ordinance provides:
 "This ordinance shall take effect on the eleventh consecutive day following its passage by the City Council as provided in Chapter III. Section 9 of the Woonsocket Home Rule Charter and all ordinances inconsistent herewith are hereby repealed."
[4] The text of the current version of G.L. § 41-9-4 is identical to the earlier version in effect at the time ofLangevin.
[5] Chapter 4, Sections 9 and 10 of the Woonsocket Home Rule Charter provide respectively:
Section 9. Approval of ordinances. Every ordinance passed by the council shall be submitted to the mayor, who within ten (10) consecutive days, either shall approve the ordinance by affixing his signature or shall return the ordinance to the council by transmitting it to the city clerk with a statement setting forth his objections.
Section 10. Taking effect of ordinances; overriding veto. No ordinance shall take effect without the approval of the mayor unless (a) the mayor shall fail either to sign the ordinance or to return it to the council within ten (10) consecutive days after passage, or (b) the council, upon reconsideration at its next regular meeting after its return by the mayor shall approve the ordinance by vote of five (5) of its members, notwithstanding the disapproval of the mayor, in which case the ordinance shall take effect immediately.
[6] With respect to the arbitrary and irrational classification issue, defendant incorporates the arguments made in the 1997 case. See Defendant's Post-Hearing Memorandum dated January 29, 1999.
[7] Since the Fourteenth Amendment to the United States Constitution and Article 1, Section 2, of the Rhode Island Constitution provides for similar protections, only one analysis is necessary. See Rhode Island Insurers' Insolvency Fund v.Leviton Mfg. Co., Inc. 716 A.2d 730, 734 (R.I. 1998).